**Dwayne HALL, Plaintiff-Appellant,**

**v.**

**Terry D. HALL, Defendant-Appellee.**

**No. 83–5134.**

United States Court of Appeals, Sixth Circuit.

May 3, 1984.

Stephen A. Sanders, Addison Parker, Appalachian Research & Defense Fund of Ky., Inc., Prestonsburg, Ky., for plaintiff-appellant.

Dan Rowland, Prestonsburg, Ky., for defendant-appellee.

Before ENGEL, KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

Appellant Dwayne Hall appeals the district court's order which denied his motion for an award of attorney's fees pursuant to 42 U.S.C. § 1988. For the reasons set forth below we reverse the order of the district court, and remand for an award of attorney's fees.

On March 22, 1980, seventeen-year old Dwayne Hall was involved in a five car automobile accident in Wheelwright, Kentucky. Dwayne was driving a car owned by Kenny Reynolds, who was a passenger in the car. Jimmy Slone, a Wheelwright police officer whose car had been damaged in the accident, placed Dwayne under arrest and charged him with driving under the influence of alcohol. A short time later appellant Terry Hall, who was a trooper with the Kentucky State Police, arrived at the scene of the accident. Several persons at the scene, including Dwayne Hall, Kenny Reynolds, and a bystander, testified they saw no injuries to Dwayne other than a scratch on the arm. At the accident scene Dwayne was allegedly unruly and verbally abusive toward Trooper Hall. Trooper Hall placed Dwayne and Kenny Reynolds in his police cruiser and accompanied by Officer Slone, drove the two arrestees to Prestonsburg, Kentucky, for a breathalyzer test. The drive from Wheelwright to Prestonsburg was about forty-five miles, and took from forty-five minutes

to an hour. Trooper Hall and Officer Slone testified that Dwayne threatened Trooper Hall, cursed him, and was verbally abusive during the entire trip to Prestonsburg. They also testified that Dwayne acted wild and kicked at the windows and screen that separated the back of the cruiser from the front, and that Dwayne's disruptive behavior continued into the Municipal Building parking lot at Prestonsburg. Dwayne was handcuffed at all times. Kenny Reynolds testified that Trooper Hall and Dwayne argued loudly, and Dwayne said things about Trooper Hall's wife or girlfriend.

Once they arrived at the Prestonsburg municipal building, Trooper Hall and Officer Slone removed Dwayne from the cruiser. The officers, however, left Kenny Reynolds in the car. Trooper Hall and Officer Slone escorted Dwayne into the municipal building and down the hall to the breathalyzer room.

The parties dispute what next happened. Dwayne testified that when he entered the room Trooper Hall assaulted him. According to Dwayne:

A. Terry said, "now, now, little Hall," and then he hit me right along in here and he hit me right along in here, and it left a great big knot.

Q. This was in the breathalyzer room?

A. Just as you enter into the breathalyzer room.

Q. At the time had you said anything to him?

A. No sir. Nothing that I could remember saying.

Q. Had he done anything?

A. No sir, I couldn't do anything. My hands were handcuffed and I had my legs to walk?

Q. What happened after this first blow was struck?

A. I went against the wall and after that the only thing I can tell you that I remember is that I was sitting in a chair in the breathalyzer room and he had a black tablet in his left hand and he said, "When you want anything, you call me Mr. Hall," and he hit me in my jaw with

his tablet in his hand. (Transcript at 30–31.)

State Trooper Hall's testimony conflicted with Dwayne's. According to Trooper Hall, when they entered the room he removed the handcuffs and Dwayne swung at him but missed. A struggle ensued. When questioned at trial Trooper Hall testified:

Q. Where was this exactly when you took the cuffs off?

A. In the breathalyzer room.

Q. What happened when you took the cuffs off?

A. As soon as I took the cuffs off, Dwayne Hall, like I said, he had threatened me, cussing all the way down to Prestonsburg and when I took the handcuffs off, he turned around and swung at me and hit me on the left shoulder. And at that point I grabbed him and we both hit against the filing cabinets which was lined up along the wall and we hit the floor. (Transcript at 111).

The breathalyzer test was finally administered and Dwayne was taken back to the police car. Kenny Reynolds testified that the police "opened the door [and Dwayne] just kind of fell down in the seat." Reynolds testified he saw bruises on Dwayne's face, a knot on his head, and marks behind his ear.

Trooper Hall and Officer Slone took Dwayne to the juvenile detention center in Prestonsburg. The detention center would not admit Dwayne because they said he appeared to be severely injured. Helen Jarrell, a worker at the center, testified she saw a large lump on his head, and that his face was red, and she feared he might have a concussion. Helen Jarrell also testified that Dwayne was scared, and that he pleaded with her not to let Trooper Hall take him away from the detention center. The officers then took Dwayne to the hospital, and he was admitted. X-rays were taken of his chest and head, and he was given intravenous fluids. He had a large knot or lump on his forehead, a black eye, several knots on his head, bruises behind both ears,

and multiple bruises on his back. Dwayne remained in the hospital for four days. At the time of Dwayne's discharge, the doctor stated in her report:

There was a 1″ × 1″ bruise mark on the left forehead above the eye, and also including the left eyelid. There was some discoloration of the eyelid. There was another bruised area 1″ × 1″ on the frontoparietal area left side and smaller bruise marks behind both ears. There was a linear abrasion of the left arm near the elbow. There was no bleeding from the nose or ears. The throat was within normal limits. Neck was supple, no stiffness. Chest and lungs were clear to a usculation and percussion. Cardiovascular system was within normal limits, no murmur was heard. The abdomen was soft and had no masses or tenderness. Extremities were normal. He was able to move without any limitations. There was no gross or focal neurological deficit. His chest x-ray showed a normal chest, and nasal bones showed no fracture. (Transcript at 96–97).

A jury trial was held on September 13–14, 1982. The jury returned a verdict for appellee and awarded him $5,234.80 in damages. Appellant's motion for a new trial was denied, and he appealed. On November 2, 1982, appellant Dwayne Hall filed a motion for attorney's fees pursuant to 42 U.S.C. § 1988 and submitted a time record of counsel and affidavit in support of this motion. Appellee Trooper Hall filed a motion to defer action on the attorney's fee motion until the appeal was decided. The court sustained appellee's motion on November 17. Appellant filed a motion to vacate the trial court's order. The trial court denied this motion on December 7, 1982. Appellant petitioned this Court for a writ of mandamus, but before a ruling could issue the district court entered an order denying appellant's request for attorney's fees, and appellant filed a notice of appeal.

§ 1988 of the Civil Rights Attorney's Fees Awards Act of 1976 provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title ... the Court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

Although the language in § 1988 provides that the award of attorney's fees is discretionary, this Court, on several occasions, has stated that the district court's exercise of discretion must be in keeping with the Congressional intent of the statute.

In *Price v. Pelka*, 690 F.2d 98 (6th Cir. 1982), plaintiff, a Black woman, brought suit against a white couple who refused to rent to her because she was Black. The plaintiff prevailed in the district court, but the judge refused to award attorney's fees because the plaintiff had perjured herself on the witness stand. This Court held that it was an abuse of discretion for the trial judge to deny attorney's fees:

Although the language of section 1988 is permissive, the court must exercise its discretion consistent with the congressional purpose underlying this statute ... *Congress expressly stated that the prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.* (Emphasis added.) 690 F.2d at 101.

The Court's reasoning in *Price* was based on an earlier decision of this Court in *Northcross v. Bd. of Education of Memphis City Schools*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). *Northcross* held that the prevailing party should ordinarily recover attorney's fees unless special circumstances would render an award unjust. 611 F.2d at 635. Our Court specifically addressed the bounds of the district court's discretionary power when it stated:

[I]n making fee awards in civil rights cases today, courts are no longer applying their historical equitable powers to devise an adequate remedy. That power was sharply limited in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421

U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) which rejected any inherent equitable power of the courts to award fees when the plaintiffs were functioning as private attorneys general, and ruled that any authorization for fees in such situations would have to come from Congress. Congress responded, enacting the Civil Rights Attorney's Fees Awards expressly to fill the void left by *Alyeska*. This statute did more than simply enable the lower courts once again to award fees; rather than being an equitable remedy, flexibly applied in those circumstances which the court considers appropriate, it is now a *statutory* remedy, and the courts are obligated to apply the standards and guidelines provided by the legislature in making an award of fees. 611 F.2d at 632.

The trial judge, in denying attorney's fees to appellant, the prevailing party, said:

The court perceives the plaintiff to have been, on this occasion, a drunken, undisciplined, obnoxious and abusive young fool, contemptuous of the lives of others on the highways and of law enforcement functions and personalities. He seemed to have little regard for his responsibilities to the society which permitted him to operate a vehicle on the highways and which gave him his day to pursue in court his accuser and, admittedly, his tortfeasor. Members of the public, and certainly this plaintiff, also, have reciprocal duties in such matters to, first, not make of oneself a physical and sociological threat to the society that nutures them and, second, to cooperate with law enforcement efforts and to not, by one's self-induced intoxication, lack of discipline and utter disregard for the rights and sensitivities of others, add to an already stressful collision and arrest situation.

The court cannot find that this case falls within the ambit, tenor, and purpose of 42 U.S.C. § 1988.

The district court's reasoning ignores the teachings of *Price* and *Northcross*, and the legislative intent and purpose behind both the Civil Rights and Attorney's Fees Awards Statutes. These statutes were enacted to vindicate the rights of parties who had suffered violations of civil rights laws and to encourage private enforcement of these laws through compensation to attorneys. Congress was concerned with encouraging private enforcement of civil rights law by enabling plaintiffs to obtain competent counsel. The statutes make no distinction between well-mannered and behaved parties and drunken, ill-mannered parties. To deprive a prevailing party attorney's fees because his behavior is less than ideal conflicts with Congress' intent. Moreover, to penalize anti-social and obnoxious plaintiffs from securing attorney's fees for their counsel has a chilling effect upon counsel's willingness to represent such individuals. Indeed because ill-mannered individuals are oftentimes the ones who are subjected to excessive police force, such distinctions would not only discourage attorneys from representing these individuals but would also dissuade such individuals from ever bringing suit. This result is contrary to the very purpose of § 1983, which is to vindicate individuals whose civil rights have been violated.

It may be important to note that although the trial judge cites appellant for his drunken intoxicated behavior, appellant was never prosecuted on the charge for which he was arrested. In fact, he claims the automobile accident was the result of the gas pedal sticking. Assuming however that plaintiff was drunk and ill-mannered, these reasons do not rise to the level of special circumstances which would warrant a trial judge to decline an award of attorney's fees. Therefore, we are constrained to find that the trial judge's decision not to award attorney's fees was an abuse of discretion.

Accordingly, the order of the district court denying plaintiff's motion for attorney's fees is reversed, and the case is remanded to the district court for a determination of the amount of attorney's fees to be awarded.