UNIVERSITY OF NEVADA; UNIVERSITY OF NEVADA, LAS VEGAS; DR. LEONARD GOODHALL, AS PRESIDENT OF THE UNIVERSITY OF NEVADA, LAS VEGAS, AND OFFICER OF THE UNIVERSITY OF NEVADA; AND FRANKIE SUE DEL PAPA, LILLY FONG, DOROTHY GALLAGER, CHRIS KARAMANOS, JOAN DENNY, DANIEL J. KLAICH, JOHN McBRIDE, JOANN SHERRIN AND JUNE WHITELY AS MEMBERS OF THE BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA, APPELLANTS, v. JERRY TARKANIAN, RESPONDENT.

No. 23494

July 7, 1994 879 P.2d 1180

---

*Jones, Jones, Close & Brown* and *Gary R. Goodheart,* Las Vegas; *Donald Klasic,* General Counsel University System, Reno, for Appellants.

*Lionel Sawyer & Collins,* Las Vegas, for Respondent.

584

## OPINION

*Per Curiam:*

This litigation between basketball coach Jerry Tarkanian (Tarkanian) and his former employers—the University of Nevada at Las Vegas and its Board of Regents (collectively referred to as UNLV)—has had a long and tortuous history. It began in 1977,

when the National Collegiate Athletic Association (NCAA) concluded that Coach Tarkanian had violated numerous NCAA rules and urged UNLV to suspend him from his coaching duties.

Coach Tarkanian responded by filing this lawsuit, in which he ultimately sued both UNLV and the NCAA for allegedly violating his federal due process rights. *See* 42 U.S.C. § 1983 (1979). Coach Tarkanian prevailed in the district court. The case then commenced a lengthy appellate journey—making two trips to this court and one to the United States Supreme Court—which eventually resulted in affirmance of the judgment against UNLV and reversal of the judgment against the NCAA. At the conclusion of these initial appeals, the case returned to the district court, which ordered UNLV to pay Tarkanian's costs and attorney's fees in an amount of $150,725.58 plus interest.

UNLV now appeals from the district court's order granting Coach Tarkanian his costs and attorney's fees. In what we hope will be the final ruling in this lengthy litigation, we affirm the district court's order.

## FACTS

In 1977, following a lengthy investigation, the NCAA concluded that UNLV and Tarkanian had violated numerous NCAA rules.[1] The NCAA accordingly imposed sanctions against UNLV and recommended that UNLV suspend Tarkanian or else face even stiffer sanctions. UNLV decided to follow this recommendation and thereafter informed Tarkanian of its decision.

The day before the suspension was to take effect, however, Tarkanian sued UNLV in district court for declaratory and injunctive relief. Tarkanian alleged, inter alia, that UNLV's suspension of him would violate the Fourteenth Amendment of the Constitution by depriving him of property and liberty interests without due process of law.

Tarkanian prevailed at trial, and UNLV appealed to this court. This court reversed the judgment of the district court on the grounds that Tarkanian had failed to join a necessary party, the NCAA. *See* University of Nevada v. Tarkanian, 95 Nev. 389, 594 P.2d 1159 (1979).

Tarkanian again sued in district court, this time adding the NCAA as a party. On June 25, 1984, after a bench trial, the district court held that both UNLV and the NCAA had deprived

---

[1]The NCAA sponsors and regulates intercollegiate athletic competition throughout the United States. Member institutions, such as UNLV, are required to abide by NCAA rules as a condition to participation in NCAA sponsored events. Where the NCAA determines that its rules have been violated by one of the member institutions, it has the power to impose a variety of sanctions.

Tarkanian of procedural and substantive due process in attempting to suspend Tarkanian from his position as head basketball coach for two years. Tarkanian was denied his claim for attorney's fees as damages under state law but obtained his requested injunctive relief as well as attorney's fees and costs pursuant to 42 U.S.C. § 1988 (1980). The district court permanently enjoined both defendants from severing Tarkanian's relations with the UNLV intercollegiate athletic program.

The NCAA brought a motion to retax and settle costs, which was heard on December 4, 1984. On January 21, 1985, the district court entered an order denying the NCAA's motion to retax and settle costs and awarding Tarkanian $195,951.92 in costs, including attorney's fees. The district court further ordered that the costs were to be apportioned as follows: (1) the NCAA was to pay ninety percent ($176,356.73) of the award, and (2) UNLV was to pay ten percent of the award ($19,595.19).

The NCAA alone appealed from the district court judgment and order apportioning costs. UNLV did not appeal, and Tarkanian cross-appealed only from the district court's denial of his state law attorney's fees as damages claim.[2] This court upheld the injunction but partially reversed the award of attorney's fees because it included fees for the first trial and $5,000.00 in undocumented costs. See Tarkanian v. Nat'l Collegiate Athletic Association, 103 Nev. 331, 741 P.2d 1345 (1987). Accordingly, this court remanded the matter for a recalculation of attorney's fees. Id.

On September 9, 1987, Tarkanian filed a motion for an award of attorney's fees incurred on appeal to this court. By order entered February 25, 1988, this court denied Tarkanian's motion

---

[2]After the district court entered its order, UNLV sent Tarkanian's counsel (Lionel Sawyer & Collins) a check for ten percent of Tarkanian's award, along with a release and satisfaction. Tarkanian's counsel responded by letter dated February 25, 1985, which stated:

We received your letter of February 21, 1985 enclosing UNLV's check in the amount of $19,595.19, [and] a RELEASE and a SATIS-FACTION OF ORDER. As your letter requires execution of the release and satisfaction before we cash the check, we will just hold the check in trust pending resolution of the following problem.

Specifically, while we are willing to execute the satisfaction of order, neither Jerry Tarkanian nor this firm are willing to release UNLV at this time. As you have yourself acknowledged to me, it is possible that the NCAA will argue and the Nevada Supreme Court will agree that UNLV should pay more than 10% of the cost award. While we believe such a determination to be remote, that is a risk UNLV has decided to take by not appealing and is not a risk that is fairly passed off to the plaintiff and his counsel by way of the release.

UNLV thereafter agreed to let Tarkanian cash the check after he signed only the satisfaction but not the release.

without prejudice to his right to file the same in district court and stated that Tarkanian was entitled to reasonable attorney's fees for services rendered on appeal. Pursuant to this court's mandate, Tarkanian moved to recalculate costs. The district court granted the motion, awarding costs and attorney's fees of $336,859.78 against the NCAA, which included costs of the appeal to this court.

In the meantime, the NCAA appealed to the United States Supreme Court. *See* NCAA v. Tarkanian, 488 U.S. 179 (1988). In a 5-4 decision, the Court reversed, concluding that the NCAA could not be held liable because its actions did not constitute state action and were not performed under color of state law pursuant to 42 U.S.C. § 1983 (1979). The Court held that UNLV was the entity that actually suspended Tarkanian, which suspension was the state action that created liability under the statute. The case was then remanded to this court for further proceedings.

Upon remand from the United States Supreme Court, this court remanded the case to the district court and ordered the district court to enter an order vacating the injunctive decree against the NCAA and also vacating any orders assessing attorney's fees against the NCAA. This court refused to address the NCAA's request for vacatur of the injunction against UNLV, stating: "[W]e remand this matter to the district court for further proceedings in which all the original parties to this litigation shall have an opportunity to address the propriety of the NCAA's request." Tarkanian v. NCAA, Docket No. 16256 (Order of Remand at 6, September 28, 1989). This court further suggested that the district court "receive appropriate evidence, entertain appropriate legal argument from all concerned parties, and enter appropriate findings of fact and conclusions of law on any or all matters it deems pertinent to a proper constitutional and equitable result." *Id*. at 3.

Accordingly, the district court vacated all prior orders holding the NCAA liable for Tarkanian's attorney's fees and vacated the injunctive decree insofar as it pertained to the NCAA. The district court left undisturbed the injunction against UNLV, stating that it remained in full force and effect. Additionally, the district court expressly declared: "This order is without prejudice to plaintiff's right to file an application for costs and fees against all defendants other than the NCAA, and the Court hereby retains jurisdiction for that purpose."

Tarkanian subsequently moved for an order seeking to impose his costs, including attorney's fees, against UNLV. On June 8, 1992, the district court granted Tarkanian's motion. The district court found that as a prevailing plaintiff in a civil rights action, Tarkanian was entitled to reimbursement for his costs, including

attorney's fees, pursuant to 42 U.S.C. § 1988 (1980) and Kentucky v. Graham, 473 U.S. 159 (1985).[3] Accordingly, the district court awarded Tarkanian $150,725.58 in costs, plus interest thereon. UNLV appeals.

## DISCUSSION

Tarkanian was awarded attorney's fees as costs under 42 U.S.C. § 1988 (1982) as a prevailing plaintiff in a section 1983 civil rights action. In pertinent part, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982), provides: "In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Notwithstanding the discretionary language of section 1988, "[t]he legislative history indicates that a prevailing plaintiff should receive fees almost as a matter of course." Davis v. Murphy, 587 F.2d 362, 364 (7th Cir. 1978); accord Ackerly Communications, Inc. v. City of Salem, 752 F.2d 1394, 1396 (9th Cir.), cert. denied, 472 U.S. 1028 (1985). The Supreme Court has recently explained that a civil rights plaintiff "prevails" when "actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, ...... U.S. ......, ......, 113 S. Ct. 566, 569 (1992).

The civil rights statutes were enacted "to vindicate the rights of parties who had suffered violations of civil rights laws and to encourage private enforcement of these laws through compensation to attorneys." Hall v. Hall, 738 F.2d 718, 721 (6th Cir. 1984). "[T]he purpose of § 1988 [is] to enable litigants with valid claims to present their claims without having to bear the burden of the costs." J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469, 1474 (10th Cir. 1985). In Kentucky v. Graham, 473 U.S. 159 (1985), the Supreme Court stated, "the logical place to look for recovery of fees is to the losing party—the party legally

---

[3]On December 6, 1993, UNLV filed with this court "Appellants' Motion that the Supreme Court take Judicial Notice of Papers filed in the Eighth Judicial District Court" (the Motion). The Motion requested that this court take judicial notice of statements made in an affidavit filed by Lionel Sawyer & Collins, in support of a motion filed in the Eighth Judicial District Court in another proceeding involving the parties to this appeal. We decline to take judicial notice of the affidavit as it is from a different proceeding that bears no relation whatsoever to this case. Occhiuto v. Occhiuto, 97 Nev. 143, 145, 625 P.2d 568, 569 (1981).

responsible for relief on the merits." *Id.* at 164. The Court further stated that "liability on the merits and responsibility for fees go hand in hand." *Id.* at 165.

As a general rule, a prevailing plaintiff may recover reasonable attorney's fees as costs under section 1988 unless the losing defendant can establish the existence of special circumstances which would make the award unjust. *See Graham*, 473 U.S. at 163-64. The defendant bears the burden of showing the existence of special circumstances, and "must make a 'strong showing' to justify denial of section 1988 fees to [a] prevailing plaintiff[]." Martin v. Heckler, 773 F.2d 1145, 1150 (11th Cir. 1985). Because the civil rights statutes do not expressly provide such a "special circumstances" exception, moreover, "the judicially imposed provision should be narrowly construed so as not to interfere with the congressional purpose in passing such statutes." *Id.*

*Standard of review*

On appeal from an order awarding costs and attorney's fees to a prevailing civil rights plaintiff, the reviewing court must determine whether the order represents an abuse of the trial court's discretion. *See* Jones v. Continental Corp., 789 F.2d 1225, 1229 (6th Cir. 1986). As this court has explained: "The award of attorney's fees resides within the discretion of the court. Moreover, in the absence of a manifest abuse of discretion, the court's decision on the issue will not be overturned." County of Clark v. Blanchard Constr. Co., 98 Nev. 488, 492, 653 P.2d 1217, 1220 (1982); *accord* Chowdry v. NLVH, Inc., 109 Nev. 478, 851 P.2d 459 (1993); Franklin v. Bartsas Realty, Inc., 95 Nev. 559, 562-63, 598 P.2d 1147, 1149 (1979).

Simply to label the matter discretionary, however, is to tell only part of the story. The degree of the trial court's discretion depends on the nature of the particular ruling being challenged. For example, the district court has "virtually no discretion to deny a fee award to a prevailing plaintiff." Dan B. Dobbs, *Awarding Attorney Fees Against Adversaries: Introducing the Problem,* 1986 Duke L.J. 435, 448 (1986); *see* Albemarle Paper Co. v. Moody, 422 U.S. 405, 415 (1975). By contrast, in fixing the amount of an award, the trial judge has broader discretion as the amount must merely be "reasonable." *See* 42 U.S.C. § 1988 (1982). In the "relatively unsettled" area of the law concerning

apportionment of fees assessments, moreover, it appears that the trial judge's discretion is tempered only by reason and fairness. *See Grendel's Den,* 749 F.2d at 959-60; *accord* Kosters v. Perales, 903 F.2d 131 (2nd Cir. 1990).

UNLV challenges the district court order awarding attorney's fees to Tarkanian on three main grounds. First, UNLV contends that the district court abused its discretion by ordering UNLV to pay one hundred percent of Tarkanian's attorney's fees incurred in this litigation, even though the district court's original order held UNLV responsible for only ten percent of Tarkanian's fees. Second, UNLV raises the related contention that the district court's January 21, 1985, order awarding attorney's fees became a final judgment and res judicata as to UNLV since UNLV did not appeal from the original order, and that the district court therefore erred by imposing a new cost and fee order. Finally, UNLV argues that this court lacked jurisdiction to consider or modify the order apportioning attorneys fees. We address each contention in turn.

## *The district court order awarding attorney's fees*

We first consider whether the district court abused its discretion on remand by ordering UNLV to pay all of Tarkanian's costs, including attorney's fees, incurred in this litigation. To resolve this issue, we must initially look to the district court's fee award itself. The original order awarding fees provides, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that pursuant to N.R.S. 18.005 et seq. and 42 U.S.C. § 1988 plaintiff is awarded the amount of $195,951.92 as costs including attorney's fees.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the award of costs including attorney's fees shall be apportioned among defendants as follows: (1) defendant NCAA shall be assessed and shall pay to plaintiff the amount of $176,356.73, which is equal to 90% of the award; and (2) defendant UNLV shall be assessed and shall pay to plaintiff the amount of $19,595.19, which is equal to 10% of the award.

UNLV contends that this order should be read to have made UNLV and the NCAA severally liable for only the amount awarded against each, and the trial court accordingly abused its discretion when it construed the order to say otherwise. UNLV seeks support for its position from the decision in Koster v. Perales, 903 F.2d 131 (2nd Cir. 1990), which stated that a trial

court "may allocate the fee award between the responsible parties, setting the percentage for which each is liable where the claims against the defendants are separate and distinct or where culpability is significantly unequal, *or* it may hold the responsible parties jointly and severally liable for the fee award." *Id.* at 139 (citation omitted; emphasis added). UNLV argues that this "or" in the above-quoted language from *Koster* is disjunctive and stands for the proposition that a court may *either* allocate liability for a specific percentage of the award (thus indicating the imposition of several liability), *or* it may hold the parties jointly and severally liable for the entire amount awarded. A review of the case law addressing the issue of apportionment of attorney's fees reveals that UNLV's argument is not persuasive.

As with most attorney's fee rulings, apportionment of attorney's fees by a trial court amongst section 1983 defendants is discretionary. *See* Koster v. Perales, 903 F.2d 131 (2nd Cir. 1990); Grendel's Den, Inc. v. Larkin, 749 F.2d 945 (1st Cir. 1984). The Second Circuit put it thusly in *Koster:*

> The allocation of fee liability is a matter committed to the district court's discretion and will not be disturbed unless the determination evidences an abuse of discretion. Although the law governing apportionment of attorney's fees assessments remains relatively unsettled, district courts have appropriately considered a variety of factors in allocating fee liability including the relative culpability of the parties, and the proportion of time spent litigating against each defendant.

*Koster,* 903 F.2d at 139 (citations omitted).

Similarly, in *Grendel's Den,* the court acknowledged that "the law concerning apportionment of fees assessments remains relatively unsettled and . . . a number of theories for apportioning fees have been advanced." *Grendel's Den,* 749 F.2d at 959. The court discussed "the simplest approach of dividing the award equally among the defendants," and "the more sophisticated approaches of apportionment by degree of each defendant's liability . . . and apportionment by relative time spent litigating against each defendant." *Id.* at 959-60 (citations omitted). The court noted "[e]ach of these theories may be more or less valid in a given case. For example, where discrete injuries have been demonstrably caused by different parties, apportionment on the basis of degree of liability may be most practical and equitable." *Id.* at 960.

In this case, there were no such "discrete injuries," and thus

the most common basis for fee apportionment does not exist here. Instead, Tarkanian's injury was singular and was caused by the combined actions of both the NCAA and UNLV. Justice White put it best when he observed that UNLV suspended Tarkanian "because it embraced the NCAA rules governing conduct of its athletic program and adopted the results of the hearing conducted by the NCAA, as it had agreed it would. Under these facts, . . . the NCAA acted jointly with UNLV." NCAA v. Tarkanian, 488 U.S. 179, 203 (1988) (White, J., dissenting).

Courts have traditionally imposed joint and several liability under such circumstances—that is, where two or more defendants combine to cause a single, indivisible injury, courts have generally held each defendant responsible for the entire amount of the judgment. *See, e.g.*, Price v. Aztec Ltd., Inc., 701 P.2d 294, 297 (Idaho Ct. App. 1985); Azure v. City of Billings, 596 P.2d 460, 470 (Mont. 1979); Powell v. Powell, 370 P.2d 909, 911 (Okla. 1962); *see generally* W. Page Keeton et al., Prosser & Keeton on the Law of Torts, § 52, at 347 (5th ed. 1984).

While we recognize that fee liability is not altogether analogous to liability on the merits, we see no reason to *prohibit* the imposition of joint and several fee liability where the losing defendant has caused the plaintiff to suffer a single, indivisible harm. We accordingly agree with those courts that have afforded trial courts discretion to impose such fee liability. *See, e.g.*, Smith v. Updegraff, 744 F.2d 1354, 1368 (8th Cir. 1984); Riddell v. National Democratic Party, 712 F.2d 165, 169 (5th Cir. 1983); *and see* Dan B. Dobbs, *Awarding Attorneys Fees Against Adversaries: Introducing the Problem*, 1986 Duke L.J. 435, 458 (1986).

Specifically, we adopt in Nevada the following statement of the law:

> The only limitation on the district court's discretion to award fees jointly and severally is that it must do so *consistently with the pre-existing background of substantive liability rules*. *See Kentucky v. Graham*, 473 U.S. at 171, 105 S. Ct. at 3108; *Dean v. Gladney*, 621 F.2d 1331, 1339-40 (5th Cir. 1980), *cert. denied*, 450 U.S. 983, 101 S. Ct. 1521, 67 L. Ed. 2d 819 (1981) (defendants must be joint tortfeasors). Of course, the district court should "make every effort to achieve the most fair and sensible solution that is possible." *Grendel's Den*, 749 F.2d at 960.
>
> Thus, although apportionment may in some cases be a more equitable resolution, there is no rule in this circuit that requires it whenever possible . . . .

Koster v. Perales, 903 F.2d 131, 139 (2nd Cir. 1990) (emphasis added).

Applying this rule here, we conclude that the district court acted within its discretion when it held UNLV responsible for the entire fee award, because UNLV helped cause Tarkanian to suffer a single, indivisible injury. We caution, however, that our opinion should not be construed to mean that the imposition of joint and several fee liability is required whenever joint and several liability is imposed. Rather, we emphasize that the matter is purely a discretionary one.

UNLV also contends that a plaintiff who obtains relief against only one out of several defendants cannot recover a full fee award, which necessarily includes fees incurred litigating against the successful defendant. While there is some support for this position, *see* Pawlak v. Greenawalt, 713 F.2d 972, 979 (3rd Cir. 1983), it does not represent a hard and fast rule. Ultimately, a trial court must award a reasonable fee, however the method upon which a reasonable fee is determined is subject to the discretion of the court. For instance, the Court of Appeals for the Ninth Circuit acknowledged that a district court has the discretion to reduce a lodestar[4] figure to account for a plaintiff's "limited success." The court explained:

> In cases in which a plaintiff's success is limited, we have instructed the district court to apply a two-part analysis: First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. . . . If the unsuccessful and successful claims are related, then . . . the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive.

Corder v. Gates, 947 F.2d 374, 379 (9th Cir. 1991) (quoting Cabrales v. County of Los Angeles, 864 F.2d 1454, 1465 (9th

---

[4] "After a court has determined that attorney's fees are appropriate, it then must multiply the number of hours reasonably spent on the case by a reasonable hourly rate to reach what is termed the lodestar amount." Herbst v. Humana Health Ins. of Nevada, 105 Nev. 586, 590, 781 P.2d 762, 764 (1989); *see also* Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-66 (1986); Patton v. County of Kings, 857 F.2d 1379, 1382 (9th Cir. 1988); Southerland v. International Longshoremen's and Warehousemen's Union, 845 F.2d 796, 800-01 (9th Cir. 1988).

Cir. 1988)), *vacated on other grounds,* 490 U.S. 1087 (1989), *reinstated,* 886 F.2d 235 (9th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). After emphasizing that the "'purpose of a fee award is to encourage litigation and voluntary compliance with civil rights laws,'" *Corder,* 947 F.2d at 379 (quoting Woods v. Graphic Communications, 925 F.2d 1195, 1207 (9th Cir. 1991)), the Ninth Circuit explained:

> In cases such as the present one, where a plaintiff brings an action against a large number of defendants, but manages to prevail only with regard to a few, perhaps an award granting 100% of the accrued attorney's fees encourages *too* much litigation. While it is true that the plaintiffs succeeded in proving a civil rights violation, they did so at the cost of forcing many individuals to bear the expense of defending against apparently meritless allegations. . . . Plaintiffs initially accused more than fifty defendants of violating their civil rights, yet obtained a verdict against three. . . . Obviously, then, the district court would have sound reasons for reducing a fee award in this type of a situation.
>
> On the other hand, our cases also make clear that the district court could have awarded plaintiffs the full lodestar amount. In *Rivera v. City of Riverside,* 763 F.2d 1580 (9th Cir. 1985), *aff'd on other grounds,* 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986), plaintiffs sued thirty-two defendants, including thirty individual police officers. Plaintiffs prevailed against only six officers. . . . Nevertheless, we held that the district court did not abuse its discretion when it declined to reduce the attorney's fee award for limited success, despite the plaintiffs' failure to prevail against the majority of the original defendants. Thus, *Cabrales* and *Rivera* together indicate that district courts have considerable discretion in determining attorney's fees, a rule that is in conformity with the teachings of *Blanchard* [Blanchard v. Bergeron, 489 U.S. 87 (1989)] and *Hensley* [Hensley v. Eckerhart, 461 U.S. 424 (1983)].

*Corder,* 947 F.2d at 379-80 (footnotes omitted). In *Cabrales,* the plaintiff was the mother of former inmate Sergio Cabrales, who brought suit against more than twenty sheriff's deputies and the county after her mentally ill son hanged himself while in solitary confinement. She succeeded only on her claim that the county maintained a policy of indifference to the safety and medical needs of the inmates. The Ninth Circuit upheld the district court's twenty-five percent reduction for limited success. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1465 (9th. Cir. 1988), *vacated on other grounds,* 490 U.S. 1087 (1989), *reinstated,* 886 F.2d 235 (9th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).

Tarkanian could be considered a "limited success" plaintiff since he did not ultimately prevail on his claim against the NCAA. However, it is most significant that Tarkanian was given all the relief he sought under his section 1983 action. The *Corder* court stated: "If a plaintiff ultimately wins on a particular claim, she [or he] is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings." *Corder,* 947 F.2d at 379 n.5 (quoting Cabrales v. County of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991)). Applying either a "limited success" analysis, or viewing Tarkanian as having prevailed on his claim despite some adverse rulings, we conclude that the district court did not abuse its discretion in awarding one hundred percent of the fee award to Tarkanian against UNLV. We note that the original fee award was reduced for Tarkanian's ultimately unsuccessful first trial, and the award of fees for defending against the NCAA's appeal was vacated. Tarkanian was in fact ordered to pay some of the NCAA's fees on appeal. Thus, Tarkanian's unsuccessful claims have been considered at various points throughout this litigation, and the fees were accordingly reduced to arrive at a reasonable fee award.

A logical construction of the order itself mandates the same result. As a general rule, judgments are to be construed like other written instruments and given the most reasonable and consistent construction as possible. *See* Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950). This court has previously stated:

> Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive, and which makes the judgment harmonize with the facts and law of the case, and be such as ought to have been rendered.

*Id.* at 292, 217 P.2d at 365 (quoting Aseltine v. District Court, 57 Nev. 269, 273, 62 P.2d 701, 702 (1936)); *see also* Lindsay v. Lindsay, 52 Nev. 26, 280 P. 95 (1929).

As discussed previously, the district court first found that Tarkanian was a prevailing plaintiff. It then awarded Tarkanian his statutory fees under section 1988 against both defendants. At the behest of the parties, the district court then apportioned the award. The apportionment of the attorney's fees was secondary and incidental to the finding of liability on the part of UNLV and the NCAA. There is also evidence in the record to indicate that the district court intended to impose joint and several liability on

the NCAA and UNLV. The district court's original conclusions of law provide:

> 4. Both the Defendant NCAA and the Defendant UNLV have deprived the Plaintiff Tarkanian of procedural due process . . . .
>
> 5. Both the Defendant NCAA and the Defendant UNLV have deprived the Plaintiff Tarkanian of substantive due process . . . . [T]he decision by NCAA was arbitrary and capricious, and the decision of UNLV was vicariously so.

The district court continued: "(UNLV) carried out the real aim of the NCAA (severing Tarkanian), not out of respect for the NCAA's 'Findings,' but due to fear of the seemingly omnipotent Enforcement Division of NCAA." Thus, a reasonable, effective, and conclusive interpretation of the judgment and award of attorney's fees supports joint and several liability for the fee award.

UNLV argues that it is unfair to burden it with the entire fee award since Tarkanian litigated primarily against the NCAA, the "true villain" in this case. We recognize that this appeal involves a battle between two relatively "innocent" parties. Nonetheless, we are bound by the doctrine of law of the case; this court must adhere to the determination of the United States Supreme Court that the NCAA is not a state actor. Additionally, it must be remembered that UNLV did suspend Tarkanian, and the district court found UNLV violated Tarkanian's due process rights in so doing. It is not inequitable that UNLV pay the attorney's fees incurred in vindication of Tarkanian's civil rights, as the district court has unfailingly found that UNLV violated Tarkanian's civil rights. UNLV has consistently been a "losing party" in this civil rights litigation, and Tarkanian has consistently prevailed against UNLV. On remand, the district court was presented with the option of imposing responsibility for the payment of the attorney's fees on either a prevailing civil rights litigant or a losing defendant. We perceive no abuse of discretion in its choosing to impose the costs of this lawsuit on the latter.

Moreover, this court is mindful of the purpose of the fee award in civil rights litigation. Attorney's fees under section 1988 "*are not* awarded to punish defendants. Attorney's fees *are* awarded to encourage meritorious civil rights actions by ensuring reasonable compensation for victorious plaintiffs' attorneys." Corder v. Gates, 947 F.2d 374, 383 (9th Cir. 1991). "The basic purpose of a § 1983 damages award should be to compensate persons for

injuries caused by the deprivation of constitutional rights.'' Farrar v. Hobby, ...... U.S. ......, ......, 113 S. Ct. 566, 573 (1992); Carey v. Piphus, 435 U.S. 247, 254 (1978).

In light of the express purpose of section 1988, the fact that Tarkanian obtained all the relief he sought under section 1983, and given a reasonable construction of the original judgment and order awarding and apportioning attorney's fees, we conclude that the district court did not abuse its discretion on remand when it ordered that UNLV must pay all of Tarkanian's costs, including attorney's fees.

## Res judicata

UNLV did not appeal from the June 25, 1984, judgment or the January 21, 1985, order apportioning costs. UNLV contends that the order awarding and apportioning costs was thus a final judgment and res judicata as to UNLV. UNLV maintains that the original judgment and order apportioning fees imposed several liability on UNLV for ten percent of the fees and on the NCAA for ninety percent of the fees. UNLV urges that the doctrine of res judicata precluded Tarkanian from seeking a reapportionment of costs on remand.

Generally, the doctrine of res judicata precludes parties or those in privity with them from relitigating a cause of action or an issue which has been finally determined by a court of competent jurisdiction. Horvath v. Gladstone, 97 Nev. 594, 597, 637 P.2d 531, 533 (1981); Gilbert v. Warren, 95 Nev. 296, 594 P.2d 696 (1979). The doctrine is intended to prevent multiple litigation causing vexation and expense to the parties and wasted judicial resources by precluding parties from relitigating issues they could have raised in a prior action concerning the same controversy. Hulsey v. Koehler, 267 Cal. Rptr. 523, 526 (Ct. App. 1990). For res judicata to apply, three pertinent elements must be present: (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation. *Horvath,* 97 Nev. at 597, 637 P.2d at 531.

Additionally, there are two different species of res judicata that might arguably apply here: issue preclusion and claim preclusion.

Issue preclusion, or collateral estoppel, may be implicated when one or more of the parties to an earlier suit are involved in

subsequent litigation on a different claim. Issues that were determined in the prior litigation arise in the later suit. If the common issue was actually decided and necessary to the judgment in the earlier suit, its relitigation will be precluded. Charles Wright states:

> The general rule of issue preclusion is that if an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties . . . . For purposes of issue preclusion, a final judgment includes any prior adjudication of an issue in another action that is "determined to be sufficiently firm to be accorded conclusive effect."

Charles A. Wright, Law of Federal Courts § 100A, at 682 (4th ed. 1983); *see* Restatement (Second) of Judgments § 13 (1982). Collateral estoppel is generally invoked when separate causes of action are presented in the first and second suits. The doctrine provides that any issue that was *actually and necessarily litigated* in one action will be estopped from being relitigated in a subsequent suit.

Collateral estoppel thus applies to issues that were "actually and necessarily litigated." UNLV argues that the district court judgment and order apportioning costs imposed several liability on UNLV for ten percent of the judgment. To apply collateral estoppel to the instant case, the issue of the NCAA's and UNLV's relative liability to Tarkanian must have been actually and necessarily litigated. The record on appeal does not contain any indication that the parties raised or litigated the issue of each defendant's relative liability to Tarkanian or culpability for the deprivation of Tarkanian's due process rights. Nor does the district court order state that its apportionment was based on such a determination of relative culpability. To give preclusive effect to an issue, it must be clear that the issue was actually adjudicated. Thus, there is no issue preclusion here.

Claim preclusion, or merger and bar, is triggered when a judgment is entered. A valid and final judgment on a claim precludes a second action on that claim or any part of it. *See* Gilbert v. Warren, 95 Nev. 296, 594 P.2d 696 (1979). The preclusive effect is generally as to a subsequent action on the same claim or part thereof, not as to subsequent proceedings in the same litigation. *See* Office Services Corp. of America v. CAS Systems, Inc., 666 P.2d 1373 (Or. Ct. App.), *rev. denied,* 670 P.2d 1036 (Or. 1983); Charles A. Wright, Law of Federal Courts

§ 100A (4th ed. 1983). The claim of a prevailing plaintiff is merged into the judgment. If the defendant prevails, the plaintiff is thereafter barred from subsequent suits on the same claim. *See* Restatement (Second) of Judgments § 24 (1982). The modern view is that claim preclusion embraces all grounds of recovery that were asserted in a suit, as well as those that could have been asserted, and thus has a broader reach than collateral estoppel. *See* Batterman v. Wells Fargo Ag. Credit Corp., 802 P.2d 1112 (Colo. Ct. App. 1990); Matter of Herbert M. Dowsett Trust, 791 P.2d 398 (Haw. Ct. App. 1990); Madsen v. Borthick, 769 P.2d 245, 247 (Utah 1988).

Because the issue of UNLV's relative culpability and inter se liability was not actually litigated, the inquiry in the instant case becomes whether the issue might have been properly litigated in the district court. A careful consideration of the original posture and nature of this litigation compels a negative response. Tarkanian sought injunctive relief; the NCAA and UNLV were jointly named as defendants in Tarkanian's section 1983 action. The central issues were whether the NCAA and UNLV deprived Tarkanian of a federal right under color of state law. UNLV was not adverse to the NCAA, and there were no monetary damages at stake, thus the issue of each defendant's degree of culpability or liability inter se was not in issue. For res judicata purposes, a judgment against several defendants settles nothing as to their relative rights and liabilities inter se, unless their hostile and conflicting claims were actually brought in issue, litigated and determined. *See* Burrell v. Southern Pacific Co., 474 P.2d 466 (Ariz. Ct. App. 1970); B & E Installers v. Mabie & Mintz, 101 Cal. Rptr. 919 (Ct. App. 1972); Gies v. Nissan Corp., 204 N.W.2d 519, 523 (Wis. 1973). We conclude, therefore, that the doctrine of res judicata did not prevent the district court from awarding all the costs against UNLV on remand.

The record in this lengthy litigation does not support UNLV's argument that the apportionment award determined each defendant's relative culpability and liability inter se. Rather, the judgment in this case was the determination that both the NCAA and UNLV violated Tarkanian's civil rights under section 1983. Accordingly, Tarkanian had a statutory right to recover attorney's fees under section 1988. The district judge then had the discretion to apportion the fees as he deemed fit. Counsel for UNLV and for Tarkanian both requested that the court apportion the award of attorneys fees. This apportionment did not reflect a determination of several liability. As discussed previously, there is no relevant statutory or case law, state or federal, that mandates that fees be apportioned in accord with liability or culpability in

section 1983 actions. Because the issue of whether the defendants were severally liable or jointly and severally liable was not in issue nor decided, the apportionment order cannot be given conclusive or preclusive effect on that issue. We thus conclude that the doctrine of res judicata did not preclude the district court from awarding Tarkanian his costs and ordering that UNLV pay said costs on remand.

*Jurisdiction*

Tarkanian cross-appealed only from that portion of the order and judgment entered June 25, 1984, denying him attorney's fees as damages. UNLV contends that "under well-settled principals of appellate procedure," reversal or modification of a judgment against a defendant who appeals does not affect the judgment against a non-appealing co-defendant, which is final, *res judicata* and cannot be modified. Thus, UNLV argues that this court, and the United States Supreme Court, never acquired jurisdiction to consider, modify, or vacate the district court order awarding costs against UNLV. UNLV seeks support from Mahaffey v. Investor's Nat'l Sec., 102 Nev. 462, 725 P.2d 1218 (1986), wherein this court dismissed an untimely cross-appeal, stating that "a timely notice of cross-appeal is jurisdictional with respect to the cross-appeal." *Id.* at 464, 725 P.2d at 1219. UNLV also cites to two federal appellate court decisions which stand for the proposition that a reviewing court may not enlarge the rights of an appellee when no cross-appeal is filed. *See* Davis v. Murphy, 587 F.2d 362, 365 (7th Cir. 1978) ("If [plaintiff] were dissatisfied with the district court award [of attorney's fees], he should have filed a cross-appeal in this court. Lacking such an appeal this court cannot review the district court's decision."); North Texas Producers Ass'n v. Metzger Dairies, Inc., 348 F.2d 189, 197 (5th Cir. 1965) ("[I]n the absence of a cross-appeal, this Court cannot enlarge the rights of the appellee.").

For purposes of this appeal, we find it unnecessary and inappropriate for this court to address the issue of whether the United States Supreme Court had jurisdiction to consider, modify, or vacate the district court judgment as it pertained to UNLV. There are, however, several aspects of UNLV's jurisdiction argument that we feel compelled to address. First, Tarkanian received full relief in the initial judgment and order awarding costs, thus he had no occasion to appeal from it. We are not persuaded that Tarkanian could or should have anticipated the outcome of the NCAA's appeal to the United States Supreme Court. Indeed, because Tarkanian received full relief initially, he was not an aggrieved party and could not have appealed from the original

judgment.[5] *See* NRAP 3A(a); In re Estate of Hughes, 96 Nev. 178, 605 P.2d 1149 (1980); Ronnow v. City of Las Vegas, 57 Nev. 332, 65 P.2d 133 (1937); *see also* Farnham v. Farnham, 80 Nev. 180, 391 P.2d 26 (1964) (successful party is not an aggrieved party and thus is not entitled to file cross-appeal).

UNLV's argument that this court lacked jurisdiction to consider or modify the district court's costs award is also flawed.[6] Significantly, the NCAA appealed from the entire June 25, 1984, judgment. Since the NCAA's notice of appeal designated the entire judgment and the fee award, this court had jurisdiction to consider the same on appeal. *See* NRAP 3(c). Further, this court's adjudication of the NCAA's rights and Tarkanian's rights would necessarily have an impact on UNLV's rights. Where a non-appealing party's rights under a judgment are dependent upon and interwoven with the parts of a judgment determining the appealing parties' rights, an appellate court can reverse the entire judgment if justice so requires. *See* Grouse Creek Ranches v. Budget Financial Corp., 87 Nev. 419, 488 P.2d 917 (1971); Blache v. Blache, 233 P.2d 547 (Cal. 1951); Kvenild v. Taylor,

---

[5]As noted previously, Tarkanian did appeal from that portion of the judgment he was aggrieved by.

[6]Tarkanian cites to the case of Anthony v. Petroleum Helicopters, Inc., 693 F.2d 495, 497 (5th Cir. 1982), for the proposition that appellate courts have the discretionary power to retain all the parties in a lawsuit on remand. UNLV argues, at some length, that *Anthony* is no longer viable in light of the United States Supreme Court's decision in Torres v. Oakland Scavenger Co., 487 U.S. 312 (1988).

In *Torres*, a notice of appeal from a judgment of dismissal listed the names of fifteen out of sixteen plaintiffs as parties to the appeal in the body of the notice, but did not list the petitioner. The Court held that failure to name a party in a notice of appeal, as required by FRAP 3(c), bars the appellate court from exercising jurisdiction over that party, even if the failure to do so was due to a clerical error. The Court held that because the petitioner was not named, and all others were specifically named, the notice of appeal failed to "give[] fair notice of the specific individual or entity seeking to appeal." *Id.* at 318. The use of the phrase "et al." in the caption also failed to provide notice of a particular defendant's intent to appeal, particularly since all the others were specifically named. *Id.* Thus, the Court held that the court of appeal had properly held that the dismissal was final as to the petitioner. From this, UNLV argues that this court did not have jurisdiction over UNLV as a non-appealing party and that the district court judgment was final, res judicata, and not subject to modification on remand.

The primary difficulty with UNLV's argument is that *Torres* did not announce a general rule of appellate procedure; it was interpreting a specific rule of procedure. *See* Chicano Educ. & Manpower Serv. v. Dept. of Labor, 909 F.2d 1320, 1329 (9th Cir. 1990). That rule, FRAP 3(c), places certain requirements on parties bringing an appeal. *Compare* NRAP 3(c). The case at hand presents an entirely different question.

594 P.2d 972 (Wyo. 1979). The rule under which a judgment becomes final as to a non-appealing party, even though a judgment is reversed on appeal, is not applied where portions of a judgment adverse to the non-appealing party are so interwoven with the whole that an appeal from a part affects other parts. In such a situation, a reviewing court can reverse an entire judgment if necessary to do justice. In re Sanderson's Estate, 6 Cal. Rptr. 893 (Ct. App. 1960).

We acknowledge the principle argued by appellant that "a judgment will not be set aside or altered on appeal in favor of a person who has not filed a timely notice of appeal, whether an appellee or a co-party of the appellant" is well recognized and quite generally applied. 9 James Moore, Moore's Federal Practice § 204.11[5] (1993). Nonetheless, the facts of this case do not warrant an application of that principle. In the prior appeal, this court did not alter a judgment in favor of an appellee who did not cross-appeal. Rather, this court upheld the injunction ordered by the district court, partially reversed the award of attorney's fees, and remanded the matter for further proceedings, which included a recalculation of attorney's fees. See Tarkanian v. Nat'l Collegiate Athletic Association, 103 Nev. 331, 741 P.2d 1345 (1987).

Finally, we note that Tarkanian did not seek to attack the district court judgment. As the prevailing party below, he could argue in support of the judgment without filing a cross-appeal, even if his rationale differed from that of the district court. "[E]ven if an appellee does not file a cross-appeal or cross-petition, he may defend the judgment in his favor with any argument that is supported by the record." 9 James Moore, Moore's Federal Practice § 204.11[3] (1993); see United States v. American Railway Express Co., 265 U.S. 225 (1924); see also Engleson v. Burlington N. R.R., 972 F.2d 1038, 1041 (9th Cir. 1992) (a cross-appeal is not necessary to assert arguments in support of judgment as entered, even if alternative theories are raised); accord Johnson v. Enron Corp., 906 F.2d 1234, 1238 (8th Cir. 1990).

Further, with regard to any equitable concerns, UNLV was permitted to fully participate on remand to the district court even though it had not appealed. As noted by this court in its order of remand:

> Although UNLV did not appeal the injunctive decree previously entered against it, that fact alone will not necessarily preclude the university from participating in further proceedings below. See System Federation v. Wright, 364 U.S. 642, 647 (1961) (a court possesses continuing authority to modify injunctive decree where "the circumstances, whether of law or fact, obtaining at the time of its issuance

have changed, or new ones have since arisen''); Foley v. Smith, 437 F.2d 115 (5th Cir. 1971) (on remand, a trial court may pass upon any issues not expressly or impliedly disposed of on appeal); Hawkins v. Cleveland, C., C. & St. L. Ry., 99 F. 322 (7th Cir. 1900) (where decision and mandate of a reviewing court reverses a lower court's judgment and remands the matter for further proceedings not inconsistent with the appellate decision, the lower court has the same authority to permit amendment of the pleadings for the purpose of enlarging the issues and of admitting further proofs as it had before the entry of the reversed decree).

Tarkanian v. NCAA, Docket No. 16256 (Order of Remand at 2-3, September 28, 1989). We conclude that UNLV's arguments are without merit as this court had jurisdiction to consider the entire judgment appealed from. Further, we note that the district court complied with the directions of this court on remand, and we perceive no abuse of discretion by the district court. We have considered all of the other issues raised by UNLV on appeal and find them unpersuasive.

## CONCLUSION

Under Kentucky v. Graham, 473 U.S. 159 (1985), and 42 U.S.C. § 1988 (1982), the party legally responsible for relief on the merits is the party who should also bear fee liability. Tarkanian has consistently prevailed against UNLV and was given the requested injunctive relief he sought. As a prevailing civil rights litigant, Tarkanian is entitled to an award of reasonable attorney's fees. The amount of the award was found to be reasonable by the district court, and we have no evidence to indicate otherwise. We conclude that the district court did not abuse its discretion in awarding the total fee award against UNLV. Accordingly, we affirm the order of the district court.[7]

---

[7]THE HONORABLE CLIFF YOUNG, Justice, voluntarily recused himself from participation in the decision of this appeal.