**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD PIKE,
　　　　　　　*Plaintiff-Appellee,*

v.

J. BRAD HESTER, in his official and
individual capacities,
　　　　　　*Defendant-Appellant,*

and

SEAN MUNSON, in his official and
individual capacities; RICK KEEMA,
in his official and individual
capacities; JIM PITTS, in his official
and individual capacities; ELKO
COUNTY SHERIFF'S OFFICE, a
government entity; ELKO COUNTY,
Nevada, a government entity,
　　　　　　　　　　*Defendants.*

No. 16-16764

D.C. No.
3:12-cv-00283-
RCJ-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, Senior District Judge, Presiding

Submitted October 10, 2017[*]
San Francisco, California

Filed June 6, 2018

Before:  Diarmuid F. O'Scannlain, A. Wallace Tashima,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge O'Scannlain

---

[*] The panel unanimously finds this case suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2)(C).

# SUMMARY[**]

## Civil Rights

The panel affirmed the district court's summary judgment denying qualified immunity to a sheriff's sergeant in an action brought pursuant to 42 U.S.C. § 1983 alleging that the sergeant violated plaintiff's Fourth Amendment rights when he conducted an after-hours dog search of plaintiff's locked office.

Prior to filing his § 1983 action, plaintiff had petitioned a county justice court for a temporary restraining order against the sergeant, which the state court justices initially granted, and subsequently extended for two months. The district court determined that issue preclusion did not apply, but that on the merits, the search violated the Fourth Amendment, and that a reasonable officer would have been aware that the search was unlawful. Accordingly, the district court denied qualified immunity to the sergeant.

The panel held that issue preclusion did apply and that the panel was bound by the state justice's conclusion that the sergeant violated the Fourth Amendment. Applying Nevada issue preclusion law, the panel determined that: (1) the alleged Fourth Amendment violation was at issue in the state court proceeding; (2) the sergeant was a party; (3) the state justice's order extending the protective order was final for issue preclusion purposes; and (4) the state justices actually and necessarily litigated the Fourth Amendment issue and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

found that the search was not lawful.  The panel further held that it was clearly established at the time of the search that the sergeant's conduct violated plaintiff's rights.

Dissenting, Judge O'Scannlain disagreed with the majority's holding that a two-month restraining order, granted by a state court of limited jurisdiction, has issue-preclusive effect with respect to a § 1983 cause of action premised on a constitutional violation and requesting compensatory and punitive damages.  Judge O'Scannlain stated that plaintiff failed to properly raise issue preclusion on appeal, that issue preclusion was not applicable in any event, and that because the issue of whether the sergeant had permission to search was critical, he would reverse the district court's summary judgment and remand for further proceedings.

---

## COUNSEL

Katherine F. Parks, Brian M. Brown, and Kevin A. Pick, Thorndal Armstrong Delk Balkenbush & Eisinger, Reno, Nevada, for Defendant-Appellant.

John Neil Stephenson, Stephenson Law PLLC, Reno, Nevada, for Plaintiff-Appellee.

## OPINION

TASHIMA, Circuit Judge:

In 2011, J. Brad Hester, a sheriff's sergeant, conducted an after-hours dog search of Richard Pike's locked office. Pike successfully petitioned a state court for an order of protection against Hester. Pike later sued Hester in federal district court, claiming that the search violated his Fourth Amendment rights. In district court, Pike moved to preclude from relitigation certain issues he said the state court had already decided. The district court granted the motion in part. Pike later moved for offensive summary judgment on his Fourth Amendment claim. The district court granted the motion, concluding that Hester's search violated the Fourth Amendment and that Hester was not entitled to qualified immunity because Pike's right to be free from such a search was clearly established. Hester appealed.

We too conclude that Hester violated Pike's clearly established constitutional rights, although we depart from the district court's analysis in some respects. First, we hold that the state justice court's conclusion that Hester violated the Fourth Amendment is precluded from relitigation. Second, because it was clearly established at the time of the search that Hester's conduct violated Pike's rights, Hester is not entitled to qualified immunity. We affirm.

## I. Factual Background

In 2011, Hester was a sergeant in the Elko County Sheriff's Office. Pike was the Elko County recreation director and the assistant high school football coach in the Elko County unincorporated town of Jackpot, Nevada. In his

role as recreation director, Pike worked out of an office –
shared with his assistant – at the Jackpot Recreation Center
(the "Center") in Jackpot.  Pike and Hester did not have a
friendly relationship, which Hester attributed to Pike's
alleged mistreatment of one of Hester's sons in 2007.  Hester
and Pike's relationship soured in October 2007, when, Hester
alleges, Pike hit Hester's son, a high school football player,
during a football game that Pike was coaching.  Hester's son
was then benched for the second half of the game and
suspended for the following game for arguing with Pike.

## A.  The Search of Pike's Office

In August or September 2011, Hester activated the sirens
on his patrol car to pull over Lynn Forsberg, the county
director of public works and Pike's boss. Hester had a request
for Forsberg.  Hester told Forsberg that he believed that
certain Center employees, including Pike, were "dealing
drugs" out of the building.[1]  Hester asked Forsberg if he
"would care" if Hester searched the Center.  Forsberg and
Hester dispute how Forsberg responded.  Forsberg says he
told Hester that "if he wanted to search the recreation center,

---

[1] Although Hester does not contend the search was supported by
probable cause, he said in a deposition that he had received information
about drug activity at the Center from Richard Pickers, a state law
enforcement investigator.  Pickers testified that an informant told him
about drug activity at the Center, but Pickers did not recall the informant
mentioning a specific Center employee's name.  By contrast, Hester
testified that Pickers identified someone else as a Center employee who
was dealing drugs.  Pike became a target based on information Hester
received from lay sources, including Pike's ex-girlfriend.  Notably,
Pickers passed his information to Hester before Pickers left the Nevada
Investigation Division in April 2011 – at least several months before the
search.

he could call me, I would come up and let him in." Hester says that Forsberg gave him unconditional permission to search the Center "'[a]nytime, day or night.'" Hester also told Forsberg that he already had a key to the Center, which prompted Forsberg to change the Center's locks.

Soon thereafter, and without further talking to Forsberg, Hester led a nighttime search of the Center.[2] Hester, who was off duty and in plainclothes, was accompanied by Deputy Sean Munson, K-9 Deputy Mike Moore, and Moore's drug dog. Hester used his key to unlock the Center. The dog searched the entire building in about ten minutes. As part of the search, Hester unlocked the door to Pike's office and entered with Moore and the dog. The dog did not alert to drugs anywhere in the office. The officers did not open any drawers or touch any items in the office. Hester asked Moore to have the dog sniff a file cabinet outside Pike's office a second time because the dog had scratched it on the first pass, but the dog did not alert on the second pass. The officers did not take any notes during the search and did not file a report afterward.

The animosity between Pike and Hester escalated. Pike learned of the search a few weeks later and filed a grievance with the sheriff's office. Some time after the search, Hester met with the high school athletic director, Kim Smith, to complain about Pike's conduct as a football coach. Hester also told Smith that Pike was "one of the biggest potheads in town." When Pike learned about that conversation, he asked

---

[2] None of the parties or witnesses recalls the exact date of the search, but it must have occurred shortly after Hester and Forsberg's conversation, as Forsberg changed the Center's locks only "a few days" after learning that Hester had a key.

Smith to write a letter documenting her meeting with Hester. Pike then complained to a sheriff's office lieutenant a second time.

In January 2012, after an internal affairs investigation, the sheriff's office suspended Hester without pay for 30 hours because the search of Pike's office was "conduct unbecoming" an officer. The letter informing Hester of the discipline did not mention the Smith meeting.

## B. Justice Court Proceedings

On November 15, 2011, Pike petitioned the Elko County Justice Court for a temporary restraining order ("TRO") because, he alleged, Hester was stalking him in violation of state law. Nevada Revised Statutes § 200.575(1) provides:

> A person who, without lawful authority, willfully or maliciously engages in a course of conduct that would cause a reasonable person to feel terrorized frightened, intimidated, harassed or fearful for the immediate safety of a family or household member, and that actually causes the victim to feel terrorized, frightened, intimidated, harassed or fearful for the immediate safety of a family or household member, commits the crime of stalking.

Among the bases for Pike's TRO petition was Hester's search of Pike's office. Pike also claimed that after he had filed the second grievance, Hester "repeatedly drove by [Pike's] residence and/or stopped and stared at him." Without holding a hearing, the justice court issued a TRO.

Pike then applied for a two-month extension of the protective order. The justice court held a hearing on December 12, 2011, at which Pike, Hester, Forsberg, and other witnesses testified. The court extended the protective order and explained its decision in an addendum. It was not disputed that Pike actually felt intimidated by Hester; thus, the court explained, "The issue . . . is really whether Hester 'without lawful authority' willfully engaged in a course of conduct that would cause a *reasonable* person to feel intimidated." The justice court continued:

> Neither party disputes that Hester directed a "dog sniff" search of the Jackpot Recreation Center without a warrant and outside the presence of Forsberg . . . .
>
> Given Forsberg's testimony, and especially given the animosity that existed between Pike and Hester at the time of the search, the court concludes that Hester did not have lawful authority to search Pike's office.

In a footnote, the court elaborated:

> The court certainly cannot conclude that there was probable cause to search Pike's office on *this* record. On *this* record, the court concludes that Hester's desire to search was colored by his animosity toward Pike. At this point, the court cannot conclude that the search was either lawful under the Fourth

Amendment . . . or done with NRS 200.571
"lawful authority."

(Emphasis in original.)

The justice court extended the protective order once again
in March 2012. Hester did not appeal from either justice
court order.

## C. District Court Proceedings

In May 2012, Pike sued Hester and other defendants in
federal court, claiming, *inter alia*, that the office search
violated the Fourth Amendment. Pike then moved the district
court to apply issue preclusion based on the justice court's
conclusions that "Forsberg did not give Defendant Hester
authority to search the Jackpot Recreation Center outside of
Mr. Forsburg's [sic] presence" and "Defendant Hester did not
have lawful authority at the time of the search." The district
court granted the motion in part, explaining, "The justice
court also found that . . . 'Hester did not have lawful authority
to search Pike's office.' . . . These specific findings, except
for the last finding insofar as it concerns an ultimate Fourth
Amendment violation, are precluded from relitigation." In a
footnote, the district court clarified why it was not granting
preclusive effect to the justice court's Fourth Amendment
conclusions:

> Although the alleged Fourth Amendment
> violation was not directly at issue in the
> justice court, the justice court does appear to
> have held that Hester exceeded his lawful
> authority as a Nevada peace officer to conduct
> the search. Still, because the ultimate issue

(whether to issue an [extended protective order]) did not require a finding of a Fourth Amendment violation, that issue was not necessarily determined.

Pike then moved for offensive summary judgment on his Fourth Amendment claim. Initially, the district court granted the motion without the benefit of responsive briefing, as the court had concluded that defendants failed to timely respond. On appeal, this court vacated the order because the district court had miscalculated the due date of defendants' opposition and remanded for the district court to consider Pike's motion in light of defendants' brief. *Pike v. Munson*, 623 F. App'x 887 (9th Cir. 2015).

On remand, the district court granted Pike's motion for summary judgment against Hester. In so doing, the district court noted that in its earlier issue preclusion order it had concluded that the "ultimate issue of a Fourth Amendment violation had not been directly litigated" and was not precluded. The district court then assessed, on the merits, whether Hester's search violated the Fourth Amendment. The court determined that Pike had a reasonable expectation of privacy in his office and that Forsberg never consented to the search. The district court further held that "it would have been clear to a reasonable officer in Hester's position that the warrantless dog sniff of Plaintiff's private office space was unlawful." As a result, the district court granted Pike's motion for summary judgment and denied Hester qualified immunity. Hester timely appealed.[3]

---

[3] The court granted summary judgment based on qualified immunity to the other sheriff's office defendants. They are not parties to this appeal.

## II. Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 and review de novo the district court's grant of summary judgment and denial of qualified immunity. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). "Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). We may affirm a grant of summary judgment on any basis supported by the record. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1131 (9th Cir. 2009).

We review questions of issue preclusion de novo. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992).

## III.    Discussion

We are asked to decide whether Hester is entitled to qualified immunity for his search of Pike's office. A government official is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Our inquiry thus has two steps: "(1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). A court may address either step first. *Pearson*, 555 U.S. at 236.

## A. Constitutional Violation & Issue Preclusion

We first assess whether Hester violated Pike's Fourth Amendment rights.   The Fourth Amendment prohibits "unreasonable searches and seizures" by government officials. U.S. Const. amend. IV.  "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Gonzalez*, 328 F.3d 543, 546 (9th Cir. 2003) (alteration in original) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).   A warrantless search is presumptively unreasonable, but valid consent is an exception to the warrant requirement. *United States v. Ziegler*, 474 F.3d 1184, 1190–91 (9th Cir. 2007); *see also Georgia v. Randolph*, 547 U.S. 103, 106 (2006) ("The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area . . . .").

On appeal, Hester challenges Pike's Fourth Amendment claim on multiple substantive grounds.[4]  We decline to reach Hester's other arguments because we determine that issue preclusion applies, and that we are bound by the justice court's conclusion that Hester violated the Fourth Amendment.[5]

---

[4] Specifically, Hester contends that Pike had no reasonable expectation of privacy in his shared office, that the search was actually a de minimis "sweep" not subject to the Fourth Amendment, and that even if the Fourth Amendment applies, Forsberg consented to the search.

[5] The dissent asserts that Pike "explicitly abandon[ed]" this argument, Dissent at 25–26, but cites only a portion of Pike's brief in which he describes the district court's conclusions.  At any rate, we may affirm

Hester contends that the district court's grant of summary judgment for Pike should be reversed because, at least in part, the court wrongly applied issue preclusion to Pike's Fourth Amendment claim based on the justice court's finding that Pike was entitled to an extended protective order. In fact, the district court expressly disclaimed doing so in both its original order applying preclusion and in the summary judgment order on remand, explaining that the "ultimate issue of a Fourth Amendment violation" was not precluded. The district court instead granted Pike summary judgment on the merits. However, on appeal we conclude – *contra* the district court – that issue preclusion resolves whether Hester violated the Fourth Amendment.

Issue preclusion, or collateral estoppel, precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties. *Clark*, 966 F.2d at 1320. A federal court applying issue preclusion "must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001). In this case, because we examine the preclusive effect of a Nevada state court decision, we apply Nevada issue preclusion law.

Under Nevada law, issue preclusion applies when four elements are met: the issues in both cases are identical, the first ruling was "on the merits and . . . final," the party against whom preclusion is sought was a party to or in privity with a party to the previous case, and "the issue was actually and necessarily litigated" in the previous case. *Five Star Capital*

---

summary judgment on any ground supported by the record. *McSherry*, 584 F.3d at 1131.

*Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008). The party seeking to apply issue preclusion bears the burden of proving that it applies. *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009). Issue preclusion applies equally to issues of fact or law. *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994).

First, we ask whether the Fourth Amendment was at issue in the justice court. The issues in two cases may be identical "even though the causes of action are substantially different, if the same fact issue is presented." *LaForge v. Nev., Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 134 (Nev. 2000). Thus it does not matter that Pike's cause of action in the first case was for stalking, while in this case he claims a Fourth Amendment violation.

Under the Nevada stalking statute, a person stalks another only if, among other things, he lacks "lawful authority" for his actions. Nev. Rev. Stat. § 200.575(1).[6] The statute defines actions taken with lawful authority to include "acts which are otherwise protected or authorized by constitutional or statutory law . . . including, but not limited to . . . [t]he activities of a person that are carried out in the normal course of his or her lawful employment." *Id.* § 200.575(9)(f)(3). Pike contended that Hester stalked him via the search, while Hester contended that Forsberg authorized the search. Thus, whether the search violated Pike's Fourth Amendment rights – in the form of whether Hester had lawful authority for his action – was at issue before the justice court. Indeed, the justice court explicitly stated, "At this point, the court cannot

---

[6] The justice court concluded that the other elements of stalking, including that Pike felt intimidated by Hester, were met.

conclude that the search was . . . lawful under the Fourth Amendment."

Second, Hester contends that the parties to the justice court action were not identical to those before the district court because, in federal court, Pike sued additional officers and Elko County entities. However, Nevada law only requires that the party against whom preclusion is sought have been a party to the first proceeding. *Five Star Capital*, 194 P.3d at 713. Hester, against whom Pike seeks to apply preclusion, was a party to the justice court case.

Hester contends that the third element of issue preclusion is not satisfied because the justice court's decision was not final. "[T]he initial ruling must have been on the merits and become final." *Id.* Nevada courts have not confronted the precise question of whether an extended protective order is final for issue preclusion purposes. In developing the state's preclusion law, the Nevada Supreme Court has sought guidance from the Restatement of Judgments. *See, e.g.*, *Tarkanian*, 879 P.2d at 1191. That authority counsels, "that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." Restatement (Second) of Judgments § 13 (1982). All those factors are present in this case. The justice court held a hearing,[7] reached the merits of Pike's stalking claim, and issued an order explaining its decision. Hester had a statutory right to appeal the justice court's extended order, although he did not do so. *See* Nev.

---

[7] A court is required to hold an adversarial hearing before issuing an extended order. Nev. Rev. Stat. § 200.591(3).

Rev. Stat. § 200.591(4). As a result, we conclude that the justice court's extended order is clearly final for issue preclusion purposes.

Lastly, we assess whether the Fourth Amendment issue was "actually and necessarily litigated" in the justice court. The justice court's decision of the issue must have been "necessary to the judgment." *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 918 (Nev. 2014) (emphasis omitted) (quoting *Tarkanian*, 879 P. 2d at 1191). If the deciding court could have reached its conclusion without resolving the disputed issue, the issue was not necessary to the judgment. *Frei ex rel. Frei v. Goodsell*, 305 P.3d 70, 73 (Nev. 2013). In addition, the party against whom preclusion is sought must have actually litigated the issue. *Howard v. Sandoval (In re Sandoval)*, 232 P.3d 422, 424 (Nev. 2010). For example, "[w]hen a default judgment is entered where an answer has not been filed, the issue presented was not actually and necessarily litigated[.]" *Id.* at 425.

In the protective order proceeding, the justice court concluded that the search was not "lawful under the Fourth Amendment." The court concluded that Hester lacked probable cause for the search and that "[g]iven Forsberg's testimony," Hester did not have permission to search the building. To determine that Hester lacked probable cause and consent, the justice court necessarily determined that Pike had a reasonable expectation of privacy in his office and that the Fourth Amendment applied to Hester's search. If the Fourth Amendment were not implicated, Hester would not have needed consent to search the office. *See Ziegler*, 474 F.3d at 1190–91 (addressing government's consent justification only

after determining that employee had a reasonable expectation of privacy in his office).

In this case, the district court concluded – without explanation – that the "ultimate issue of a Fourth Amendment violation" was not precluded from relitigation because it was not essential to the justice court's ruling. At the same time, the district court held that the justice court's conclusion that "Hester did not have lawful authority to search Pike's office" was precluded from relitigation. However, the justice court's two conclusions necessarily go hand-in-hand, both were essential to the judgment. The court could only have issued the protective order if it concluded that Hester lacked lawful authority – meaning the search was not "protected or authorized by constitutional or statutory law," such as the Fourth Amendment – to take the actions in question. *See* Nev. Rev. Stat. § 200.575(9)(f). The justice court's conclusion that Hester's search was not "lawful under the Fourth Amendment" was therefore essential to its lawful authority determination.

Moreover, the justice court's conclusion that the search was conducted without lawful authority was essential to the judgment. Although the search was one of three factual bases for Pike's protective order petition, the justice court discussed only the search at any length. The justice court also explicitly tethered Hester's search to the Nevada statute at issue, concluding that Hester "did not have lawful authority to search Pike's office." *See* Nev. Rev. Stat. § 200.575(1). As to the other bases for Pike's application, the justice court concluded that testimony about Hester's "stop-and-stare" activities was credible, but did not conclude that Hester lacked lawful authority to so act. The justice court did not even discuss Hester's meeting with Smith. Only the search

supports the justice court's stalking finding. The justice court's resolution of the Fourth Amendment issue was therefore essential to the extension of the protective order.

The issue was also actually litigated. Both Pike and Hester presented witness testimony at a one-day hearing. Forsberg and Hester testified about whether Forsberg consented to Hester's search. The justice court found that Forsberg was credible and rejected Hester's version of the events.

Finally, Hester had an incentive to litigate in the justice court. *See* Restatement (Second) of Judgments § 28 (1982). Although the dissent seizes on Pike's attorney's statement in the justice court that "there was no Fourth Amendment rights violated here," Pike's attorney went on to emphasize that "[t]he question is what was the basis for the search" and to contend that Hester lacked Forsberg's consent. As the dissent acknowledges, "whether Hester had permission to search is critical to this case." Dissent at 32. Setting aside whether *Pike*'s attorney's statement bears on *Hester*'s incentive to litigate, it is clear that whether Hester had consent to search – and thus whether he violated the Fourth Amendment – was at issue in the justice court and that Hester had every incentive to litigate it.[8]

---

[8] The dissent also contends that the issuance of a protective order on the basis of criminal stalking against Hester, a law enforcement officer, was such small potatoes that Hester had no incentive to litigate it. Dissent at 29–30. However, Hester might face imprisonment or a fine if he violated the order. This case is not one in which Hester "had good reason not to contest an issue vigorously during the first action." *Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007).

Accordingly, the justice court's conclusion that Hester's search was not lawful under the Fourth Amendment meets Nevada's requirements for issue preclusion. We are bound by that court's conclusion.

## B. Clearly Established Law

The conclusion that Hester violated Pike's constitutional rights does not end our qualified immunity inquiry. We must also ask whether Hester's conduct violated clearly established law. If the right was not clearly established, Hester is entitled to qualified immunity.

For qualified immunity purposes, a right is clearly established if "[t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Calabretta v. Floyd*, 189 F. 3d 808, 812 (9th Cir. 1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1984)). An exact factual match is not required; rather, "the unlawfulness must be apparent." *Id.*; *see also Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006) (holding that preexisting law must provide "fair warning"). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Hester first contends that no single case has held that "a consensual K-9 sniff-sweep of a public employee's shared office" is unlawful. However, the justice court concluded the search was not consensual. The relevant question is whether a no-consent dog search of a public employee's office was clearly unlawful in 2011, when the search occurred. Supreme Court and Ninth Circuit precedent easily resolve that question

in the affirmative.  *See Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (stating that a court should look first to binding precedent to determine if a right is clearly established).**[9]**

In *O'Connor v. Ortega*, 480 U.S. 709 (1987), the Supreme Court held that "[s]earches . . . by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment."  *Id.* at 715; *see also Mancusi v. DeForte*, 392 U.S. 364, 369 (1968) (holding that employee enjoyed a reasonable expectation of privacy in a shared office); *Ziegler*, 474 F.3d at 1191 (holding that officers' search of a private office violated the Fourth Amendment, absent consent). Hester had fair warning that Pike enjoyed a reasonable expectation of privacy in his office.

The fact that Hester's search involved a dog does not affect that conclusion.  In 2011, it was clearly established that dog sniff searches are exempt from Fourth Amendment protection only when the dog and accompanying officer are lawfully present.  In *United States v. Place*, 462 U.S. 696, 707 (1983), the Court stated that a dog sniff of luggage "in a public place" was not a Fourth Amendment search.  *See also United States v. Beale*, 736 F.2d 1289 (9th Cir. 1984) (en banc) (holding that dog sniff of luggage in a public place is not a Fourth Amendment search).  Subsequently, courts have

---

**[9]** For this reason, we also dispose of Hester's argument that he is protected by qualified immunity because he relied on a county dog search policy.  It is not clear that Hester's search of Pike's private locked office accords with the policy, which permits searches only in "public facilities or places."  Regardless, an officer may not rely on a department policy that is contrary to clearly established law.  *Way v. Cty. of Ventura*, 445 F.3d 1157, 1163 (9th Cir. 2006).

upheld dog searches only when the dogs were in public places or the target of the search was already lawfully detained. *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (the "use of a well-trained narcotics-detection dog" during lawful traffic stop does not implicate the Fourth Amendment); *United States v. Lingenfelter*, 997 F.2d 632 (9th Cir. 1993) (dog sniff of commercial warehouse from public alley did not implicate Fourth Amendment). Hester cites no case extending dog sniff searches beyond those bounds.[10]

Accordingly, it was clearly established in 2011 that a dog search of a public employee's private office violates the Fourth Amendment, absent consent. *See Ziegler*, 474 F.3d at 1191. Hester's conduct violated Pike's clearly established right; therefore, he is not entitled to qualified immunity.

•   ●   •

The judgment of the district court is

**AFFIRMED**. The case is **REMANDED** to the district court for a trial or other determination of damages on Pike's Fourth Amendment claim against Hester, and for a determination of Pike's remaining state law claims.

---

[10] In *Florida v. Jardines*, 569 U.S. 1 (2013), decided after Hester's search, the Court held that a dog sniff on a homeowner's curtilage was a Fourth Amendment search because the dog and officer intruded on a protected area. *Id.* at 11. The dissenting Justices did not dispute the pre-*Jardines* principle that a dog sniff is a search if the dog is not lawfully present; rather, they dissented on the basis that the dog and officer in *Jardines* were lawfully present. *See id.* at 24 (Alito, J., dissenting).

O'SCANNLAIN, Circuit Judge, dissenting:

The majority holds that a two-month restraining order, granted by a state court of limited jurisdiction, has issue-preclusive effect with respect to a § 1983 cause of action premised on a constitutional violation and requesting compensatory and punitive damages. This cannot be right.

I

A

The saga began in the Elko County Justice Court (Justice Court), which has jurisdiction to issue protective orders against "a person alleged to be committing the crime of stalking, aggravated stalking or harassment." Nev. Rev. Stat. Ann. § 4.370(1)(q) (West 2017). The Justice Court has authority to issue temporary or extended orders of protection against stalking. *See* Nev. Rev. Stat. Ann. § 200.591(3) (West 2017).

On November 15, 2011, Richard Pike, an Elko County recreation director and assistant high school football coach, applied for a temporary restraining order against Elko County sheriff's sergeant J. Brad Hester. Pike applied on behalf of himself and his two children, and the application rested on several bases.

First, he alleged that Hester made false statements about Pike to others. Hester apparently told Kim Smith, the high school athletic director, that Pike was "one of the biggest potheads in town."

Second, Pike alleged that Hester improperly searched his office. *See* Majority Op. Part I.A. The genesis of this dispute dates back to August 2011, when Hester and two deputies conducted a search of the Jackpot Recreation Center (Center), which included walking a drug dog through Pike's office in the Center. The search of the Center lasted 10 minutes and uncovered no drugs. Hester claims that Lynn Forsberg—the county supervisor and Pike's boss—authorized him to search the Center "[a]nytime, day or night." Forsberg claims that he told Hester "if he wanted to search the recreation center, he could call me, I would come up and let him in." Pike acknowledges that, under County policy, Forsberg has authority to search his office.

Third, Pike alleged that on at least several occasions, Hester drove by Pike's house and glared at him and his family. Pike also claims that Hester drove by his place of employment in a similar manner. This final incident prompted Pike to file an application for a restraining order against Hester.

The Justice Court issued an ex parte temporary restraining order (TRO) against Hester on November 15, 2011. The TRO was converted into a two-month extended order of protection (EOP) on December 14, 2011. In granting the EOP, the Justice Court explained that it could not "conclude that the search was either lawful under the Fourth Amendment or done with NRS 200.571 'lawful authority.'" But the Justice Court also relied on "testimony about Hester's 'stop and stare' activities in front of Pike's residence," finding testimony on the incident "both reliable and credible." Additionally, the court credited the testimony of Smith, to whom Hester made the disparaging remarks about Pike. Thus,

the Justice Court concluded that "for all of the foregoing reasons," the EOP would be granted for two months.

B

Pike later filed this suit against Hester and other defendants in the District of Nevada, alleging, *inter alia*, that Hester violated the Fourth Amendment pursuant to 42 U.S.C. § 1983. Pike seeks compensatory damages expected to exceed $10,000, as well as punitive damages.

Pike moved the district court to give issue-preclusive effect to several of the Justice Court's findings. The district court, while granting issue preclusion on some findings, declined to grant issue preclusion on Pike's constitutional claim, since "the ultimate issue (whether to issue an EOP) did not require a finding of a Fourth Amendment violation, that issue was not necessarily determined." Thus, the Justice Court's conclusion that Hester did not have lawful authority to search Pike's office was not precluded from relitigation "insofar as it concern[ed] an ultimate Fourth Amendment violation."

Pike later moved for summary judgment on the question of qualified immunity. The court granted summary judgment in favor of Pike, finding that there was no genuine question of material fact that Hester's search violated clearly established Fourth Amendment law. However, the court reaffirmed that "the ultimate issue of a Fourth Amendment violation had not been directly litigated" in the Justice Court.

Pike does not argue that the district court erred by refusing to grant issue-preclusive effect to the Justice Court's Fourth Amendment determination; indeed, Pike explicitly

abandons any argument to this effect, admitting that "[t]he findings by the Elko Justice Court in its extended protection order were entitled to preclusive [effect] against Mr. Hester but only as to Mr. Pike's invasion of privacy and intentional infliction of emotional distress torts, *not his Fourth Amendment claim* under §1983."

On appeal, Hester instead challenges the merits of the district court's order granting summary judgment to Pike on the issue of qualified immunity. Nonetheless, the majority, fashioning an argument that Pike declines to raise, affirms the district court's summary judgment order by stretching the issue preclusion doctrine to cover a situation that neither party, nor the district court, presses upon us. Because I cannot agree with the majority's opinion, I respectfully dissent.

II

A

Federal courts "can give the state proceedings no greater preclusive effect than the state courts would." *Shaw v. State of Cal. Dep't of Alcoholic Bev. Control*, 788 F.2d 600, 607 (9th Cir. 1986) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 386 (1985)). Thus, in determining whether the EOP should be preclusive in the instant action, we are bound by Nevada law. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980).

Under Nevada law, the following four factors are necessary for the application of issue preclusion: "'(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the

party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation;' and (4) the issue was actually and necessarily litigated." *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008) (alterations omitted) (quoting *Univ. of Nevada v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994)). The burden to make this showing falls on Pike. *See Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009).

B

Additionally, the application of issue preclusion is premised on the widely recognized understanding that the precluded party "have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." Restatement (Second) of Judgments § 28 (Am. Law. Inst. 1982).[1]

This fundamental exception to the issue preclusion doctrine has roots in Nevada law, as issue preclusion "is based upon the sound public policy of limiting litigation by preventing a party who had *one full and fair opportunity* to litigate an issue from again drawing it into controversy." *Bower*, 215 P.3d at 718 (internal quotations omitted) (emphasis added). And "[t]he most general independent concern reflected in the limitation of issue preclusion by the full and fair opportunity requirement *goes to the incentive to*

---

[1] The Supreme Court of Nevada has a "long-standing reliance on the Restatement (Second) of Judgments in the issue and claim preclusion context." *Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc.*, 321 P.3d 912, 917 (Nev. 2014). It has favorably looked to the Restatement (Second) of Judgments § 28 in the issue preclusion setting. *See Personhood Nevada v. Bristol*, 245 P.3d 572, 576 (Nev. 2010).

*litigate vigorously* in the first action." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4423 (3d ed. 2017) (emphasis added). Therefore, Nevada's requirement that a party have a "full and fair opportunity to litigate," *Bower*, 215 P.3d at 718, recognizes the common law concern that, in some instances, "[t]he stakes in the first action may be so small that extensive effort is not reasonable." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4423 (3d ed. 2017).

Appreciating this concern, the Supreme Court has cautioned that "[i]ssue preclusion may be inapt if 'the amount in controversy in the first action was so small in relation to the amount in controversy in the second that preclusion would be plainly unfair.'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1309 (2015) (alterations removed) (quoting Restatement (Second) of Judgments § 28 cmt. j). As the Court noted, "few litigants would spend $50,000 to defend a $5,000 claim." *Id.* (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4423 (2d ed. 2002)).

Following this course, *every* federal court of appeals considers one's incentive to litigate in the collateral estoppel context. *See, e.g.*, *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015); *DeGuelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013); *Kosinski v. Comm'r*, 541 F.3d 671, 677 (6th Cir. 2008); *Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006); *Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004); *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996); *In re Belmont Realty Corp.*, 11 F.3d 1092,

1097 (1st Cir. 1993); *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 322 n.7 (5th Cir. 1984); *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 666 (11th Cir. 1984); *Wickham Contracting Co. v. Bd. of Educ. of City of New York*, 715 F.2d 21, 28 (2d Cir. 1983); *Prosise v. Haring*, 667 F.2d 1133, 1141 (4th Cir. 1981).

C

I respectfully suggest that the majority's failure to consider this foundational principle of collateral estoppel is fatal to its conclusion.

First, and most importantly, the Fourth Amendment was mentioned just once over the course of the one-day hearing and such invocation was when Pike's counsel admitted that "*there was no Fourth Amendment rights violated here.*" If Pike's counsel *conceded* at the EOP hearing that Hester didn't violate the Fourth Amendment, how could Hester be said to have had *any* incentive—let alone a vigorous one—to litigate such question?

Second, the Justice Court is designed to resolve small claims in an efficient and prompt manner. *See* Nev. Rev. Stat. Ann. § 4.370 (West 2017) (limiting jurisdiction to claims under $15,000, protective orders against harassment or stalking, and certain misdemeanors). Indeed, the entire hearing over the EOP lasted just one day. And at the one-day hearing, Hester's counsel told the judge that he would not argue about "silly stuff"—such as objecting when cross-examination went beyond the scope of direct examination—so the judge could "rule and we can go all home on a Monday." In this vein, the judge noted at the outset that "[t]hese hearings are pretty darn informal." Alas,

according to the majority, such a breezy proceeding, dispensing with basic rules of evidence, was a suitable setting for Hester to litigate vigorously constitutional law.**[2]**

Moreover, the application of issue preclusion in this setting is especially unwise, as it threatens to turn Justice Court proceedings—tailored to the prompt resolution of small claims and other disputes—into full-blown trials tasked with uncovering whether or not a purported search violated the Fourth Amendment.

Collateral estoppel "is an equitable doctrine," not an inexorable command. 46 Am. Jur. 2d *Judgments* § 469 (2018). Pike's counsel conceded that the Fourth Amendment was not at issue, neutering any prospect that Hester could have harbored a strong incentive to litigate vigorously the merits of that question. Therefore, I believe it improper to grant issue preclusive effect to the EOP in this setting.

## III

Instead of giving preclusive effect to the Justice Court's Fourth Amendment determination, we should reverse the district court's grant of summary judgment and remand for trial. As the record shows, conflicting testimony over Hester's authority to search Pike's office plainly creates a genuine

---

**[2]** Pike's attorney's statement that "the question is what was the basis for the search" is hardly illuminative, contrary to the majority's view. The attorney was referring to the basis for Hester's suspicion of Pike, not whether Forsberg consented to the search. As the attorney put it, "[t]he issue is not just a semantics having to do with day or night with Mr. Forsberg. It has to do with what information that the deputy gave to Mr. Forsberg to get him to okay the search."

dispute of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A

Forsberg testified that he told Hester, "if [Hester] wanted to search the recreation center, he could call me, I would come up and let him in." Hester, on the other hand, testified that Forsberg told Hester he could conduct a search "[a]nytime, day or night."[3]

As the non-moving party, evidence must be construed in the light most favorable to Hester. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant."). Yet, the district court utterly ignored Hester's testimony—not even bothering to construe it at all, let alone in a favorable light—and simply adopted wholesale Forsberg's recollection of events. Yet, Hester offered a completely different version of their conversation, which creates a genuine dispute of fact as to whether Hester was authorized to search Pike's office.[4]

---

[3] It appears uncontested that the search occurred within a few days of this conversation.

[4] This also corrupts the majority opinion's discussion on clearly established law. As the Supreme Court has noted, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan*, 134 S. Ct. at 1866 (2014) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 195, 198 (2004) (per curiam)). By asking whether a "no-consent dog search of a public employee's office was clearly unlawful," the majority's opinion imports the dispute over consent into the description of the right at issue.

B

And, indeed, whether Hester had permission to search is critical to this case. *Anderson*, 477 U.S. at 248 (holding that a factual dispute is material if it "might affect the outcome of the suit"). If Hester received consent from Forsberg to search Pike's office, there was likely no Fourth Amendment violation. "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). Pike admitted that he understood that the County handbook policy allowed Forsberg—his boss—to search his office. We have held that an employee's privacy interest "may be subject to the possibility of an employer's consent to a search of the premises." *United States v. Ziegler*, 474 F.3d 1184, 1191 (9th Cir. 2007). Indeed, in *Ziegler*, "Frontline, as the employer, could consent to a search of the [employee's] office." *Id.* at 1192. And the search here involved only a drug dog briefly sniffing the exterior of a desk in Pike's office, and a file cabinet outside Pike's office—hardly Pike's personal belongings. *See O'Connor v. Ortega*, 480 U.S. 709, 716 (1987) (plurality opinion) ("The appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, a handbag or a briefcase that happens to be within the employer's business address."). Under these circumstances, Forsberg, similar to the employer in *Ziegler* "could give valid consent to a search . . . because the [desk] is the type of workplace property that remains within the control of the employer 'even if the employee has placed personal items in it.'" *Id.* at 1191 (alterations removed) (quoting *O'Connor*, 480 U.S. at 716). As a result,

under these circumstances, Forsberg could give valid consent to search Pike's office.[5]

IV

I would reverse the district court's grant of summary judgment and remand to the district court for further proceedings. Whether a Fourth Amendment violation occurred should be resolved at trial. *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).

---

[5] Although Forsberg had actual authority to search Pike's office, the government may alternatively obtain valid consent from a third party when the officer "reasonably believe[s] that the third party has actual authority to consent." *United States v. Fultz*, 146 F.3d 1102, 1105 (9th Cir. 1998). Hester asked Forsberg's permission because Forsberg had "final say" over the building. This was not an unreasonable conclusion given that Forsberg is the county supervisor and Pike's boss.