FILED

NOT FOR PUBLICATION

SEP 29 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PAUL A. MORABITO,<br>　　　　　　　Debtor. | BAP No.  NV-19-1267-GTaB |
| | Bk. No.  3:13-bk-51237-GWZ |
| EDWARD BAYUK; SNOWSHOE<br>PROPERTIES, LLC,<br>　　　　　　　Appellants,<br>v.<br>WILLIAM A. LEONARD, JR., Chapter 7<br>Trustee,<br>　　　　　　　Appellee. | Adv. No.  3:16-ap-05041-GWZ<br><br>MEMORANDUM[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gregg W. Zive, Bankruptcy Judge, Presiding

Before:  GAN, TAYLOR, and BRAND, Bankruptcy Judges.


INTRODUCTION

Appellants Edward Bayuk ("Bayuk") and Snowshoe Properties, LLC

("Snowshoe" and together "Appellants") appeal the bankruptcy court's

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

order granting chapter 7[1] trustee William A. Leonard, Jr.'s ("Trustee") motion for summary judgment on his adversary complaint to recover a preference. Trustee asserted that prepetition, Bayuk owed debtor Paul A. Morabito ("Debtor") $1,617,050 and, in partial satisfaction of that debt, Bayuk paid $732,124 to Bank of America, N.A., ("BofA") to satisfy Debtor's obligation. The payment extinguished the guaranty liability of Snowshoe, which was wholly owned by Bayuk through his trust. Trustee alleged that Bayuk's payment to BofA was a transfer of Debtor's interest in property which benefitted insiders Snowshoe and Bayuk.

Trustee argued that factual findings made by the Nevada state court in related fraudulent transfer litigation were preclusive of issues asserted in the preference litigation. Appellants did not dispute the facts alleged by Trustee but instead argued that the bankruptcy court should not give preclusive effect to the state court findings. Appellants have not demonstrated that the bankruptcy court erred by granting summary judgment. We AFFIRM.

FACTS

A.      Prepetition Events

In September 2010, the Nevada state court rendered oral findings of

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

fact and conclusions of law, finding Debtor and Consolidated Nevada Corporation ("CNC") liable to JH, Inc, Jerry Herbst, and Berry-Hinckley Industries (the "Herbst Parties") in the amount of $85,871,364.75. After further proceedings on claims for punitive damages and attorneys' fees, the state court entered final judgment against Debtor and CNC in the amount of $149,444,777.80. Immediately after the oral ruling in the state court case, Debtor engaged in a series of transactions to divest most of his assets.

Prior to the oral ruling, Debtor and Bayuk each owned a 50% interest in a real estate holding company called Baruk Properties, LLC. In October 2010, Debtor transferred his 50% interest in Baruk Properties to Bayuk pursuant to a Membership Interest Transfer Agreement ("Transfer Agreement"). Baruk Properties held four real properties, including a commercial property located at 570 Glenneyre, Laguna Beach, CA ("570 Glenneyre"). Based on the appraised values of the four properties, Debtor's 50% interest in Baruk Properties had a value of at least $1,654,550. After the transfer, Bayuk merged Baruk Properties into Snowshoe which was wholly owned by the Edward William Bayuk Living Trust (the "Bayuk Trust").

Under the terms of the Transfer Agreement, Bayuk was required to deliver a promissory note to Debtor in the principal amount of $1,617,050 (the "Baruk Note"). There was no evidence that Bayuk made any payments according to the terms of the Baruk Note.

In September 2012, Debtor and BofA entered into a settlement

3

agreement to resolve Debtor's defaults under a 2009 loan agreement. As part of the settlement agreement, Snowshoe executed a limited guaranty, secured by a first position deed of trust on 570 Glenneyre.

In December 2012, Bayuk paid BofA $732,124.75 to satisfy Debtor's obligations under the BofA settlement agreement and to resolve Snowshoe's liability under the limited guaranty. Bayuk treated the payment to BofA as a payment on the Baruk Note and Debtor admitted that the payment to BofA reduced his claim against Bayuk on the Baruk Note by $732,124.75.

B.     The Bankruptcy and The SuperPumper Action

In June 2013, the Herbst Parties commenced an involuntary bankruptcy petition against Debtor. The bankruptcy court denied Debtor's motion to dismiss the petition and in December 2014 granted summary judgment against Debtor, adjudicating him a chapter 7 debtor. An interim trustee was appointed in December 2014 and, in January 2015, Trustee was elected.

In December 2013, the Herbst Parties filed a fraudulent conveyance action in state court against SuperPumper, Inc., Debtor, Bayuk, Salvatore Morabito, and Snowshoe Petroleum, Inc. (the "SuperPumper Action"). The Herbst Parties sought to avoid several transfers including the transfer of Debtor's ownership interest in Baruk Properties.

In May 2015, the parties in the SuperPumper Action stipulated to

4

remove the Herbst Parties and substitute Trustee as plaintiff. The parties also stipulated to remove Debtor as a defendant. Trustee then filed an amended complaint on behalf of the bankruptcy estate. The state court conducted a six-day bench trial and entered its findings of fact and conclusions of law in March 2019.

As part of the judgment, the state court avoided the transfer of Debtor's interest in Baruk Properties and awarded damages to the estate and against Bayuk in the amount of $1,654,550. The court held that Debtor transferred his interest in Baruk Properties with actual intent to hinder, delay, or defraud creditors. In finding actual intent, the court relied on multiple "badges of fraud," including the court's determination that Bayuk was an insider of Debtor.

The state court determined that the transfer was not for reasonably equivalent value because the Baruk Note was "illusory, and certainly did not result in tangible assets available for [Debtor's] creditors."

C.     The Preference Action

In December 2016, Trustee filed an adversary complaint alleging avoidable preferences to Appellants resulting from Bayuk's payment to BofA. In January 2017, Bayuk filed a motion to dismiss. The parties stipulated to allow Trustee to file an amended complaint, which he filed in June 2017.

Appellants then filed a motion to dismiss the amended complaint.

They asserted that Trustee had not alleged sufficient facts to state a prima facie case and that neither Bayuk nor Snowshoe were insiders. Appellants' attorney withdrew as counsel of record, and in March 2019, substitute counsel filed an amended motion to dismiss on behalf of Appellants. In the amended motion to dismiss, Appellants argued that because Bayuk had an obligation to Debtor under the Baruk Note, he did not acquire any indemnification rights by making the BofA payment and neither Bayuk nor Snowshoe were insiders.

In April 2019, Trustee filed a motion for summary judgment. Trustee provided a statement of facts which included stipulated facts from related proceedings and the state court's findings and conclusions in the SuperPumper Action. Trustee also opposed the amended motion to dismiss and argued that the state court's findings conclusively decided the issue of insider status. Trustee also argued that because the state court found that the Baruk Note was a sham, Bayuk had recourse rights against Debtor.

Appellants opposed the motion for summary judgment and, for the first time, argued that the bankruptcy court lacked constitutional authority to enter a final order on the preference action under *Stern v. Marshall*, 564 U.S. 462 (2011). Appellants reiterated their arguments that they were not insiders and that Bayuk lacked recourse against Debtor, and additionally argued that there was a material issue of fact regarding whether BofA received more than it would have under a hypothetical chapter 7.

Appellants did not dispute any of the facts asserted by Trustee in the statement of facts. Instead, they argued that the factual findings made by the state court in the SuperPumper Action were not preclusive under *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000) and that the state court judgment was entered without jurisdiction and in violation of the automatic stay. They provided a declaration of their attorney which stated that there was a question of fact about whether BofA received more than it would have under a hypothetical chapter 7. However, Appellants did not provide any testimony or documentary evidence to demonstrate a genuine dispute of material fact on this issue or any other.

After a hearing, the bankruptcy court denied the amended motion to dismiss and granted the motion for summary judgment. The bankruptcy court entered written findings of fact and conclusions of law in August 2019 in which it determined that issue preclusion applied to issues decided in the SuperPumper Action. The bankruptcy court concluded that the state court had jurisdiction over the SuperPumper Action and its order did not violate the automatic stay. Based on the findings in the SuperPumper Action and Trustee's statement of facts, the bankruptcy court concluded that Trustee had established Appellants were non-statutory insiders, and because the Baruk Note was illusory, Bayuk maintained a right of indemnification from Debtor. The bankruptcy court entered a written

7

judgment on November 1, 2019. Appellants timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(F). We have jurisdiction under 28 U.S.C. § 158(a).[2]

## ISSUE

Whether the bankruptcy court erred by granting Trustee's summary judgment motion.

## STANDARD OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. *Lewis v. Kaelin (In re Cresta Tech. Corp.)*, 583 B.R. 224, 227 (9th Cir. BAP 2018). We also review questions of issue preclusion de novo. *Pike v. Hester*,

---

[2] Appellants initially argued that the bankruptcy court lacked constitutional authority to enter a final order under *Stern v. Marshall*, 564 U.S. 462 (2011). If the preference action was a *Stern* claim and Appellants did not consent to entry of final orders by the bankruptcy court, we would lack jurisdiction under 28 U.S.C. § 158(b). *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014) (*Stern* claims are treated as non-core matters); 28 U.S.C. § 157(c) (unless parties consent to entry of final orders, bankruptcy court may only enter proposed findings of fact and conclusions of law on non-core matters with any final order to be entered by the district court after de novo review). Appellants arguably consented to the bankruptcy court's entry of final orders by failing to raise the issue in their motions to dismiss as required by Local Rule 7012(b). *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1949 (2015) (bankruptcy court has constitutional authority to enter final orders with the express or implied consent of all parties). Furthermore, by electing to have this Panel hear the appeal, Appellants likely waived any right to review by an Article III court. *See id.* at 1944 ("The entitlement to an Article III adjudicator is a 'personal right' and thus ordinarily 'subject to waiver.'") (quoting *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848 (1986)). Any question in this regard was resolved at oral argument when Appellants expressly waived the *Stern* issue.

891 F.3d 1131, 1137 (9th Cir. 2018). Under a de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *In re Cresta Tech. Corp.*, 583 B.R. at 227.

## DISCUSSION

Appellants argue that the bankruptcy court erred by granting summary judgment because the bankruptcy court improperly applied issue preclusion, and there were material issues of fact.

A.   The Bankruptcy Court Did Not Err By Giving Preclusive Effect To State Court Findings

"A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment." *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015). In determining the issue-preclusive effect of a state court judgment, the bankruptcy court must apply the law of the court that rendered judgment. *Pike*, 891 F.3d at 1138. Because the judgment was entered by the Nevada state court, we apply Nevada law.

Under Nevada law, issue preclusion requires that (1) an issue be identical; (2) the initial ruling was on the merits and final; (3) "the party against whom the judgment is asserted" was a party in the prior case, or in privity with a party in the prior case; and (4) the issue was actually and necessarily litigated. *Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008).

9

For preclusion purposes, it is not relevant that the prior decision was appealed, *Edwards v. Ghandour*, 159 P.3d 1086, 1090 (Nev. 2007) *abrogated on other grounds by Five Star Capital Corp.*, 194 P.3d 709, or wrongly decided. *Holt v. Reg'l Tr. Servs. Corp.*, 266 P.3d 602, 608 (Nev. 2011). Issue preclusion applies to both issues of law and fact. *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994).

Appellants do not dispute that the requisite elements of issue preclusion were present in this case. Instead, they argue that the findings are not binding because the state court lacked subject matter jurisdiction and Trustee lacked standing to pursue the claims. They also argue that the bankruptcy court failed to conduct the necessary preclusion analysis.

1.    The State Court Had Jurisdiction

Appellants argue that the state court findings are not binding on the bankruptcy court under the holding of *In re Gruntz*, 202 F.3d 1074. In *Gruntz,* the Ninth Circuit held that a state court judgment entered in violation of the automatic stay was not binding on the bankruptcy court because the state court did not have the power to modify or dissolve the automatic stay. *Id.* at 1087. General preclusion rules do not apply to state court judgments involving matters that come within the bankruptcy court's exclusive jurisdiction. *Odd-Bjorn Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.)*, 300 B.R. 489, 498 (9th Cir. BAP 2003).

In the SuperPumper Action, Trustee asserted fraudulent transfer

10

claims under Nevada law. These claims were not within the exclusive jurisdiction of the bankruptcy court, and the state court's jurisdiction over state law claims was not preempted by Congress's grant of "original but not exclusive jurisdiction" to the bankruptcy court. *See* 28 U.S.C. § 1334(b); *Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 812 (N.D. Cal. 2006) (holding that state courts retain concurrent jurisdiction over claims brought pursuant to § 544(b)). The state court had subject matter jurisdiction over the state law fraudulent transfer claims.

Appellants have not provided any credible argument that Trustee lacked standing to pursue the fraudulent transfer claims. Appellants' reliance on *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988) is misplaced. The *Williams* court held that a bankruptcy trustee does not have standing to assert general causes of action on behalf of individual creditors. *Id.* at 667. Here, Trustee asserted the fraudulent transfer claims, not on behalf of individual creditors, but on behalf of the estate. Section 544(b) empowers Trustee to assert state law avoidance actions on behalf of the estate, and § 541(a)(3) provides that recovery on such claims becomes property of the estate.

Although the Herbst parties initiated the SuperPumper Action, once Trustee was appointed, he intervened as the plaintiff and filed an amended complaint asserting claims on behalf of the estate. Appellants did not object to Trustee's standing and instead stipulated to substitution of Trustee as

11

plaintiff. Therefore, they waived the issue. *See Contrail Leasing Partners, Ltd. v. Exec. Serv. Corp.,* 688 P.2d 765, 767 n.2 (Nev. 1984) (lack of standing must be affirmatively pleaded and failure to do so constitutes waiver).

2.     The Bankruptcy Court Properly Applied Issue Preclusion

Appellants argue that the bankruptcy court improperly applied "offensive" issue preclusion and failed to conduct the analysis required by *Weddell v. Sharp*, 350 P.3d 80 (Nev. 2015), where the parties in the present action were not identical to those in the SuperPumper Action.

Offensive issue preclusion "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979). The bankruptcy court did not apply offensive issue preclusion here because Trustee was the plaintiff in both actions.

To the extent that Appellants argue issue preclusion can only be used as a defense under Nevada law, we disagree. Other than the *Weddell* court's discussion of the "defenses" of claim preclusion and issue preclusion, Appellants cite no authority to support their position. Contrary to Appellants' argument, the Ninth Circuit, applying Nevada law, has held that issue preclusion may be asserted by a plaintiff. *See Pike*, 891 F.3d at 1138.

Appellants' argument that the bankruptcy court was required to

conduct a *"Weddell* analysis" is equally inapposite. In *Weddell*, the Nevada Supreme Court modified Nevada law to allow non-mutual claim preclusion where a defendant was not a party or in privity with a defendant in the prior action. 350 P.3d at 85. Under the holding of *Weddell*, a defendant who was not a party or in privity with a party in a prior suit can still use claim preclusion to bar subsequent litigation if it can show that it should have been included as a defendant in the prior suit and the plaintiff fails to provide a good reason for not having done so. *Id.*

The analysis required by *Weddell* is not applicable here because Appellants were parties, or in privity with parties, in the SuperPumper Action.

Nevada law "limit[s] the application of issue preclusion to those who were a party in the prior case or who were in privity with a party in the prior case." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 717 (Nev. 2009) (citing *Paradise Palms Cmty. Ass'n v. Paradise Homes*, 505 P.2d 596, 598-99 (Nev. 1973)). "To be in privity, the person must have 'acquired an interest in the subject matter affected by the judgment through . . . one of the parties, as by inheritance, succession, or purchase.'" *Id.* at 718 (quoting *Paradise Palms Cmty. Ass'n*, 505 P.2d at 599).

Bayuk and the Bayuk Trust were parties in the SuperPumper Action. Snowshoe acquired an interest in the subject matter affected by the judgment through Bayuk and the Bayuk Trust, and therefore was in privity

13

with those parties under Nevada law. The bankruptcy court did not err in its application of issue preclusion.

B.     The Bankruptcy Court Did Not Err By Granting Summary Judgment

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-moving party. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors*, 771 F.3d at 1125.

Appellants argue that there were disputed material facts about whether BofA received more than it would have under a hypothetical chapter 7, and whether Bayuk's obligation under the Baruk Note prevented his preference liability under the holding of *Stahl v. Simon (In re Adamson Apparel, Inc.)*, 785 F.3d 1285 (9th Cir. 2015).

Although the question of whether BofA received more than it would

14

have under a liquidation is a question of fact, Appellants did not provide any evidence to demonstrate a genuine dispute. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. Appellants were required to provide "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. Without providing some evidence to contravene Trustee's factual assertions, Appellants did not demonstrate a genuine issue of material fact on the question of whether BofA received more than it would have under a hypothetical liquidation.

Additionally, the bankruptcy court rejected Appellants' argument that the Baruk Note prevented liability under *Adamson Apparel* by giving preclusive effect to the state court's determination that the Baruk Note was illusory. Because the bankruptcy court properly applied issue preclusion on this issue, there was no genuine dispute of material fact.

CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's entry of summary judgment against Appellants.

15