NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 7 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In the Matter of:  R&S ST. ROSE LENDERS, LLC, | No.    15-15662 |
| Debtor, | D.C. No. 2:14-cv-00926-GMN |
| BRANCH BANKING AND TRUST COMPANY, | MEMORANDUM[*] |
| Plaintiff-Appellee, | |
| v. | |
| CREDITOR GROUP, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Gloria M. Navarro, Chief Judge, Presiding

Argued and Submitted April 20, 2017
Resubmitted September 4, 2018
San Francisco, California

Before:  THOMAS, Chief Judge, MURGUIA, Circuit Judge, and BAYLSON,[**] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Michael M. Baylson, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

This is an appeal from the District of Nevada's reversal of a Bankruptcy Court's decision to dismiss a Proof of Claim on *res judicata* grounds. Appellant seeks reversal of the District Court's decision, and, by extension, reinstatement of the Bankruptcy Court's decision. We agree with the District Court that the Proof of Claim is not barred from re-litigation, and find that the District Court correctly reversed the Bankruptcy Court's decision. Reviewing the district court's determination *de novo*, we AFFIRM.

I. **Factual History**

R&S St. Rose Lenders, LLC ("R&S") was formed to enter a land-banking arrangement with a real estate developer, Centex homes. R&S was to purchase undeveloped land ("the Property"), and Centex was to have the option to buy that land after one year. The managers of R&S formed another entity, St. Rose Lenders (referred to herein as "Debtor"),[1] in order to solicit funds from private investors to cover a portion of the purchase price of the Property.

R&S secured funding to purchase the Property in part through two loans: (1) a loan from Colonial Bank secured by a first-priority deed of trust against the Property ("2005 Colonial DOT") and (2) a promissory note payable to Debtor secured by a deed of trust ("2005 Debtor DOT"). Centex later declined to exercise its option to buy the property, so R&S secured another loan from Colonial in order

---

[1] St. Rose Lenders borrowed funds from private lenders, including Robert E. Murdock, and Eckley M. Keach, in order to cover part of the purchase price of the Property.

to retain the Property ("2007 Colonial DOT").  Using the funds from the 2007 Colonial DOT, R&S paid off the 2005 Colonial DOT only.  R&S defaulted on the 2005 Debtor DOT and the 2007 Colonial DOT, and both Colonial and Debtor moved to foreclose on the property.  Simultaneously, Colonial filed an action in Nevada State Court ("State Court Action") asserting that the 2007 Colonial DOT was superior to the 2005 Debtor DOT in priority.  The judge in the State Court Action put a temporary restraining order in place to prevent either party from moving forward with the foreclosure proceedings, pending the outcome of the State Court Action determining the priority of the two loans.

## II.     Procedural History

### a.  State Court Action

After Colonial Bank commenced the State Court Action, Colonial Bank went out of business and the FDIC became its receiver.  Branch Banking and Trust Co. ("BB&T") entered into a Purchase and Assumption Agreement to obtain the assets of Colonial Bank.  BB&T filed an Amended Complaint in place of Colonial Bank in the State Court Action to pursue Colonial's claims, asserting itself as Colonial's successor in interest.  In its Amended Complaint, BB&T advanced six causes of action to seek priority of the 2007 Colonial DOT over the 2005 Debtor DOT: two declaratory judgment claims, one promissory estoppel claim, one unjust enrichment claim, one claim of fraudulent misrepresentation, and one civil

3

conspiracy claim. The crux of the fraudulent misrepresentation and civil conspiracy claims was BB&T's allegation that the principals of R&S had represented to Colonial Bank that they would re-convey the 2005 Debtor DOT so that the 2007 Colonial DOT would be superior to the 2005 Debtor DOT. All six claims sought the same remedy – an order establishing that the 2007 Colonial DOT was superior in priority to the 2005 Debtor DOT so that BB&T could foreclose on the property.

The parties agreed to first hold a non-jury trial on BB&T's declaratory judgment claims, and delay consideration of the fraudulent misrepresentation and civil conspiracy claims. In June 2010, after a ten day trial on BB&T's first four claims, the Nevada trial court found in favor of Debtor. Murdock v. Rad, et al., No. A574852, 2010 WL 9564700 (Nev. Dist. Ct. June 18, 2010). Specifically, the court held that the only evidence that BB&T submitted to demonstrate that it was the successor in interest to Colonial, the Purchase and Assumption Agreement, was insufficient for that purpose.

> BB&T [ ] relied upon the language of the Purchase and Assumption Agreement, and no other admissible evidence, documentary or testimonial. The court hereby finds that [ ] the Purchase and Assumption Agreement was not sufficient evidence, on its face, to establish that BB&T was assigned the 2007 Colonial Bank Deed of Trust.

Id. at 7. As a result of this factual finding, the trial court concluded that "BB&T has not demonstrated that it has been assigned the interest in the 2007 Colonial

4

Bank Deed of Trust at issue and therefore has not shown it has the ability to assert the claims . . . filed by Colonial Bank." Id. at 25. Because BB&T had not met its evidentiary burden to prove it was the successor in interest to Colonial, the trial court held, BB&T could not assert Colonial's claims. Following this holding, BB&T filed a motion to voluntarily dismiss its fraudulent misrepresentation and civil conspiracy claims, which the trial court granted, so that it could appeal the trial court's decision as a final order. On appeal, in May 2013, the Nevada Supreme Court affirmed the decision of the trial court. R&S St. Rose Lenders, LLC v. Branch Banking and Trust Co. et al., No. 56640, 2013 WL 3357064 (Nev. May 31, 2013). In February 2014, the Nevada Supreme Court denied rehearing *en banc*. R&S St. Rose Lenders, LLC v. Branch Banking and Trust Co. et al., No. 56640, Order Denying *en banc* Reconsideration (Nev. February 21, 2014).

### b. Bankruptcy Court Decision and District Court Appeal

While BB&T's appeal to the Nevada Supreme Court was pending, Debtor filed for Chapter 11 relief with the Bankruptcy Court for the District of Nevada. In that action, BB&T filed Proof of Claim 43 ("POC 43"), stating a claim of $38 million dollars. In POC 43, BB&T referenced the pending appeal with the Nevada Supreme Court, and asserted the superiority of the 2007 Colonial DOT over the 2005 Debtor DOT, alleging "fraud" and "conspiracy" as the basis for their Claim. Appellant Creditor Group filed an objection to BB&T's POC, asserting that the

5

POC was barred on claim preclusion and issue preclusion grounds as a result of the decision in the State Court Action. The Bankruptcy Court agreed with the Creditor Group, and dismissed the POC in June 2014 on *res judicata* grounds. In re: R & S St. Rose Lenders, LLC, No. 11-14973-MKN, ECF 365, Order on Object. (Bankr. D. Nev. June 3, 2014). BB&T appealed to the District of Nevada. The District Court reversed the Bankruptcy Court's decision. Branch Banking and Trust Company v. Creditor Group, No. 2:14-CV-926-GMN, 2015 WL 1470692 (D. Nev., March 30, 2015). The Creditor Group filed this timely appeal.

## III. Statement of Issues Presented

Appellant seeks reversal of the District Court's decision, and by extension, reinstatement of the Bankruptcy Court's decision. Appellant advances three main arguments on appeal: (1) POC 43 is barred by issue preclusion (2) POC 43 is barred by claim preclusion, and (3) POC 43 is legally insufficient.

## IV. Jurisdiction

The District Court had jurisdiction to review the Bankruptcy Court's decision under 28 U.S.C. § 158(a)(1). This Court has jurisdiction under 28 U.S.C. § 158(d).

## V. Standard of Review

We review the District Court's decision *de novo*. In re Am. W. Airlines, Inc., 217 F.3d 1161, 1163 (9th Cir. 2000). More specifically, we consider the

6

Bankruptcy Court's decision independently of the District Court's review, and review the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. Id.

## VI. Discussion

### 1. Applicable Law

Under the Full Faith and Credit Act, a federal court must give a state-court judgment the same preclusive effect as it would be given under the law of the state in which the judgment was rendered. 28 U.S.C. § 1738; Holcombe v. Hosmer, 477 F.3d 1094, 1097 (9th Cir. 2007); see also In re Baldwin, 249 F.3d 912, 917 (9th Cir. 2001) (applying same rule in bankruptcy context). Accordingly, Nevada law concerning the preclusive effect of prior judgments applies to the Nevada state court judgment in this case. Holcombe, 477 F.3d. at 1097.

There are two preclusion doctrines at issue in this case: claim preclusion and issue preclusion. Many courts refer to these two doctrines together as *res judicata*. Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Univ. of Nevada v. Tarkanian, 879 P.2d 1180, 1191 (Nev. 1994). The Nevada Supreme Court has made clear that issue preclusion and claim preclusion are distinct from each other, and should not be conflated. Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008). Though both may be applicable to the same case, they are analytically separate. Id. at 712.

Under Nevada law, issue preclusion applies when: "(1) [the] issue [is] identical [to the issue decided in the prior litigation], (2) the initial ruling was final and on the merits, (3) the party against whom the judgment is asserted was a party or in privity with a party in the prior case, and (4) the issue was actually and necessarily litigated." Bower v. Harrah's Laughlin, Inc., 215 P.3d 709, 718 (Nev. 2009) (internal quotations omitted). If all four factors are met, issue preclusion prevents re-litigation of the already-decided issue, even when the later litigation is based on different causes of action or different situations. In re Sandoval, 232 P.3d 422, 423 (Nev. 2010).

Claim preclusion applies when: "(1) the parties or their privies are the same, (2) the final judgment is valid, and (3) the subsequent action is based on the same claims or any part of them that were or could have been brought in the first case." Five Star, 194 P.3d at 713. Unlike issue preclusion, which only applies to issues that were actually and necessarily litigated, claim preclusion applies to all claims that were raised or could have been raised in the initial case. Id.

## 2. Decisions Below

### a. Bankruptcy Court's Decision

In its objection to the proof of claim, the Creditor Group argued that the POC was barred by both claim preclusion and issue preclusion – without clearly distinguishing between these two doctrines. In assessing the merits of the Creditor

8

Group's arguments, the Bankruptcy Court first recited the applicable standards under issue preclusion and claim preclusion. In re: R & S St. Rose Lenders, LLC, No. 11-14973-MKN, 11-12 (Bankr. D. Nev, June 3, 2014). Then, without clearly articulating the basis for its decision, but suggesting that it was relying on the issue preclusion doctrine, the Bankruptcy Court held that the POC was barred because the merits of the fraud and conspiracy claims had already been decided in the State Court Action. Id. at 13. The Bankruptcy Court avoided a clear decision on claim preclusion and thereby avoided an analysis of the effectiveness of the assignment of claims from Colonial Bank to BB&T. Id.

### b. District Court's Decision

The District Court reversed the Bankruptcy Court's decision regarding issue preclusion, holding that the Nevada State Court and Nevada Supreme Court had based their decision on standing, and did not reach a merits decision regarding fraud or conspiracy. Branch Banking and Trust Company v. Creditor Group, No. 2:14-CV-926-GMN, 2015 WL 1470692, *4 (D. Nev., March 30, 2015). The District Court did not address the Creditor Group's argument that BB&T's Proof of Claim was barred by claim preclusion. Id. at 2 n. 1. In declining to do so, the District Court noted that the basis for the Bankruptcy Court's decision was not entirely clear, and also noted that the Creditor Group seemed to have abandoned

9

their claim preclusion argument on appeal.  Id.  As a result, the District Court did not analyze whether claim preclusion applies to bar POC 43.

### 3. Analysis

#### a. Issue Preclusion

The Creditor Group and BB&T disagree about whether the fourth element of the issue preclusion doctrine has been satisfied – that is, whether the common issue was "actually and necessarily litigated in" the previous action.  Five Star, 194 P.3d at 711.  In evaluating whether an issue was "actually and necessarily litigated," "actually" refers to the issue having been properly raised and submitted for determination in the prior suit, and "necessarily" refers to the issue having been necessary to the judgment in the prior suit.  See Frei ex rel. Litem v. Goodsell, 305 P.3d 70, 72 (Nev. 2013); see also Alcantara ex rel. Alcantara v. Wal-Mart Stores, Inc., 321 P.3d 912, 918 (Nev. 2014).  The Creditor Group argues that in the State Court Action, the judge found that no misrepresentation had been made to Colonial. As a result, the Creditor Group argues, that issue was litigated and decided in the State Court Action, and cannot be re-litigated again in this bankruptcy proceeding. Because BB&T's POC relies on alleged misrepresentations made to Colonial, the Creditor Group argues that the POC is barred by issue preclusion.  BB&T argues that while the State Court judge might have made findings related to misrepresentations, this issue was not "actually and

10

necessarily litigated" because the actual basis for the State Court decision was the judge's finding that BB&T did not prove that it was the successor in interest to Colonial, and therefore that it could not assert Colonial's claims.

We agree with the District Court that issue preclusion does not apply to prevent BB&T from asserting its POC with the Bankruptcy Court. The issue here – whether misrepresentations were made to Colonial – may have been litigated, but a determination on that issue was not <u>necessary</u> to the Nevada trial court's judgment.[2] The Nevada trial court clearly held BB&T was not permitted to bring claims on behalf of Colonial because BB&T failed to submit sufficient evidence to establish that it was Colonial's successor in interest. <u>Murdock v. Rad, et al.</u>, No. 11- A574852, 7 (Nev. Dist. Ct., June 18, 2010). The Nevada Supreme Court affirmed the trial court's decision on the same basis, agreeing that the evidence submitted and accepted by the Nevada trial court did not establish that BB&T owned the claims it was asserting. <u>R&S St. Rose Lenders, LLC v. Branch Banking and Trust Co. et al.</u>, No. 56640, Order of Affirmance at 6 (Nev. May 31, 2013).

---

[2] Indeed, there is some question as to whether the issue was "actually litigated" or "properly raised and submitted for determination" at all. <u>Frei ex rel. Litem</u>, 305 P.3d at 72. That is, the parties agreed to delay an evidentiary hearing regarding BB&T's fraudulent misrepresentation and civil conspiracy claims. Though testimony relevant to this issue was nevertheless elicited during the hearing, it is not clear that this was proper or that the issues were "submitted for determination." <u>Id.</u>

11

As a result, to the extent that the Nevada trial court examined the merits of any of BB&T's claims, its determinations on those substantive issues were not necessary in reaching its decision. Regardless of what conclusions the court reached on those issues, it would not have changed the outcome of its decision. Therefore, although the Nevada trial court's decision includes a finding that no misrepresentations had been made to Colonial, that finding does not relate to whether BB&T submitted sufficient evidence to show that it was the successor in interest to Colonial, which was the sole basis for the Nevada trial court's decision. Accordingly, that finding has no preclusive effect in this bankruptcy proceeding.[3]

### b. Claim Preclusion

The Creditor Group argues that even if issue preclusion does not apply here, claim preclusion bars POC 43. BB&T argues that this Court should not address this argument, because the District Court did not address it. The applicable standard of review, however, is for this Court to consider the Bankruptcy Court's decision <u>independent</u> of the District Court's decision, because this Court is in as good of a position to review the Bankruptcy Court's decision as was the District Court. <u>In re Am. W. Airlines, Inc.</u>, 217 F.3d at 1163. Therefore, it is appropriate

---

[3] This interpretation accords with <u>Branch Banking and Trust Co. v. D.M.S.I., LLC</u>, 871 F.3d 751, 760–61 (9th Cir. 2017), in which we stated that the same Nevada state court decisions were "evidentiary" rulings that the materials BB&T submitted did not "show assignment of a loan."

for the panel to consider Appellant's argument that POC 43 is barred by the claim preclusion doctrine.

As stated above, claim preclusion applies where (1) the parties are the same in both lawsuits, (2) the earlier lawsuit resulted in a valid final judgment, and (3) the claims raised in the later lawsuit were raised or could have been raised in the earlier lawsuit. Five Star, 194 P.3d at 713. The first and third elements of the test are not seriously disputed here. Indeed, the crux of the parties' dispute is whether the State Court Action resulted in a valid final judgment so as to have preclusive effect.

Without citing any law, the Creditor Group argues that the Nevada trial court's determination that BB&T had not met its evidentiary burden to show that it owned the claims it was asserting, coupled with BB&T's voluntary dismissal of its fraudulent transfer and civil conspiracy claim, constitutes a final judgment on the merits. BB&T argues that POC 43 is not barred by claim preclusion because voluntary dismissal is not a final judgment on the merits.

We agree with BB&T. Under Nevada law, "a valid final judgment . . . does not include a case that was *dismissed without prejudice* or for some reason (jurisdiction, venue, failure to join a party) that is not meant to have preclusive effect." Five Star, 194 P.3d at 713 n.27 (emphasis added) (citing Restatement (2d) of Judgments §§ 19, 20.). Here, the Nevada trial court granted BB&T's voluntary

13

motion to dismiss its fraudulent misrepresentation and civil conspiracy claims. Because the order of dismissal does not indicate otherwise, the Nevada trial court dismissed these two claims without prejudice. Nev. R. Civ. P. 41(a)(2) ("Unless otherwise specified in the order, a dismissal [by order of the court] is without prejudice."). Accordingly, the dismissal does not constitute a valid final judgment to preclude BB&T's similar claims of "fraud" and "conspiracy" as the basis for POC 43. Five Star, 194 P.3d at 713 n.27.

### c. Merits of Proof of Claim

As an alternative to its issue preclusion and claim preclusion arguments, Creditor Group asks this Court to hold that BB&T's Proof of Claim is legally insufficient. The merits of POC 43 were not considered by the Bankruptcy Court or the District Court, and the record on the substantive issues is not fully developed. It would be inappropriate to consider the merits of POC 43 for the first time on appeal, given the lack of record development, and because there is no exceptional circumstance that would allow this Court to do so. Wright v. Riveland, 219 F.3d 905, 913 n. 5 (9th Cir. 2000).

## VII. Conclusion

The judgment of the District Court is AFFIRMED and the case is REMANDED to the Bankruptcy Court for further proceedings, including consideration of the merits of POC 43.